# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Purcell Bronson,                              :
                 Petitioner        :
                                          :
        v.                         :   No. 576 M.D. 2018
                                          :   Submitted: March 29, 2019
John Wetzel, Secretary of DOC;                :
and his agents: Barry R. Smith,               :
Superintendent; Crystal Loy, Unit             :
Manager, Kelly Latterner, Counselor,          :
and Tab Bickell, Deputy Secretary,            :
             Respondents        :


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**         **FILED: September 13, 2019**


This is a matter in the Court's original jurisdiction. Petitioner Purcell Bronson (Bronson), *pro se*, filed a petition for review (Petition) against the Secretary of the Department of Corrections, John Wetzel, and other officials of the Pennsylvania Department of Corrections (collectively, DOC). In the Petition, Bronson—an inmate at the State Correctional Institution at Houtzdale—seeks a declaratory judgment that specific DOC policies and practices violate his constitutional rights or otherwise violate law. He also seeks an order requiring DOC to expunge reports of misconduct based on the challenged policies and practices. Now before the Court for consideration are DOC's preliminary objections to Claims

A, B, and H through K of the Petition.[1]  For the reasons set forth below, we will sustain the preliminary objections.

## I. STANDARDS FOR RULING ON PRELIMINARY OBJECTIONS

The scope of our review of preliminary objections is limited to the pleadings. *Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 415 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007). We do not consider "factual material that is not contained within the four corners of [a] petition for review." *Seitel Data, Ltd. v. Ctr. Twp.*, 92 A.3d 851, 862 (Pa. Cmwlth. 2014), *appeal dismissed*, 111 A.3d 170 (Pa. 2015). We must accept as true all well-pleaded material allegations in a petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). We are not, however, bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.*

We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of overruling the preliminary objections. *Id.* Recognizing Bronson's *pro se* status, we will engage in a liberal review of the allegations in the Petition to determine whether Bronson pleads facts—however inartfully—that will entitle him to relief under any legal theory. *See Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984); *see also Dep't of Auditor Gen. v. State Emps. Ret. Sys.*, 836 A.2d 1053, 1070 (Pa. Cmwlth. 2003) (en banc) ("[D]ismissal of a petition for

---

[1] DOC also requests, in its brief, that we dismiss Claims C through G of the Petition, concerning the prisoner misconduct process, because they similarly fail to state claims for relief. The preliminary objections themselves, however, do not address or object to those claims. We will, therefore, not address the sufficiency of those claims here, and DOC should respond to those claims in its answer to the Petition.

review would be improper if any theory of the law will support the claims raised in the petition."). We bear in mind, however, that "the petition for review, in our original jurisdiction, is a fact pleading document and detailed factual allegations will generally be required to describe adequately the challenged action." *Office of Atty. Gen. ex rel. Corbett v. Locust Twp.*, 49 A.3d 502, 507 (Pa. Cmwlth. 2012) (*Ex rel. Corbett*) (en banc) (quoting *Machipongo Land & Coal Co. v. Dep't of Envtl. Res.*, 624 A.2d 742, 746 n.5 (Pa. Cmwlth. 1993), *rev'd on other grounds*, 648 A.2d 767 (Pa. 1994), *opinion vacated in part on reargument on other grounds*, 676 A.2d 199 (Pa. 1996)).

## II. DISCUSSION

### A. Claims A and B—Harassment

In Claims A and B of the Petition, Bronson makes two distinct claims against DOC concerning its inmate counting practices. In Claim A, he alleges that DOC personnel carry out the inmate counting policy in an exaggerated, arbitrary fashion in order to harass him. In Claim B, he alleges that, on occasions when he was not initially standing during the counting procedure but complied with officials' later orders to stand, officials have punished him for misconduct, and that such punishment is arbitrary and constitutes harassment. In his brief on appeal, Bronson bases these harassment claims on Section 2709 of the Crimes Code, 18 Pa. C.S. § 2709, which criminalizes, *inter alia*, "commit[ting] acts which serve no legitimate purpose" with the intent to "harass, annoy or alarm another." He identifies no alternative legal theory for his harassment claims. In support of its preliminary objections, DOC argues that Bronson has not pled sufficiently specific facts to state a claim for harassment, such as the date of occurrence or the reason for the harassment. DOC also asserts sovereign immunity as a defense to any intentional

3

tort claim and encourages us to dismiss "all claims relating to the requirement to stand during count" in deference to prison officials' judgments. (Respondents' Br. at 11.)

Initially, we note that there appears to be no legal basis in tort or criminal law for Bronson's harassment claims. There is no cause of action in tort, intentional or otherwise, for harassment. *Sobel v. Wingard*, 531 A.2d 520, 522-23 (Pa. Super. 1987). Bronson claims DOC officials committed criminal harassment, *see* 18 Pa. C.S. § 2709, but the instant action is not a criminal prosecution in which we can judge that allegation. Even if DOC officials committed the conduct described in Section 2709 of the Crimes Code, Bronson has not alleged a deprivation of civil rights that would allow him to sue for a constitutional tort under 42 U.S.C. § 1983.

The only other apparent legal basis for these claims is Bronson's assertion that the count procedure and DOC's related disciplinary actions are exaggerated and arbitrary. That theory appears to relate to the inquiry we conduct to determine whether a DOC policy reasonably restricts an inmate's constitutional rights. *See Meggett v. Pa. Dep't of Corr.*, 892 A.2d 872, 883-84 (Pa. Cmwlth. 2006) (holding that, in determining whether prison regulation permissibly infringes upon constitutional rights, "the courts should consider any evidence . . . that the regulation is an exaggerated response to prison concerns." (internal quotation marks omitted)). Bronson, however, alleges only generalized "harassment" in Claims A and B—not that DOC violated his constitutional rights in some way. Moreover, he does not allege in these claims that DOC deprived him of procedural due process—though he does make that allegation in other parts of the Petition. Accordingly, Claims A and

4

B of the petition fail to state a legal claim, and we will sustain DOC's preliminary objections to them.

## B. Claim H—Inmate Grievance Process

In Claim H of the Petition, Bronson asserts that DOC forbade him from filing a grievance regarding DOC policies that would affect him in the future but that did not actually affect him at the time he attempted to file the grievance. He argues that this practice violates his right to petition, which is guaranteed by the First Amendment to the United States Constitution. In his brief, Bronson clarifies that he attempted to use the Inmate Grievance System Policy, DC-ADM 804,[2] to address his concerns. DOC demurs to this claim on the basis that Bronson has failed to connect it to any particular attempted grievance or violation of his rights. Initially, we note that Bronson's claim does not seek review of a grievance determination (such as a dismissal of a merely hypothetical grievance)—a claim over which we usually have no jurisdiction. *See Bronson v. Cent. Office Review Comm.*, 721 A.2d 357, 359 (Pa. 1998). Instead, Claim H alleges that DOC has categorically prevented Bronson from engaging in the grievance process whatsoever.

Whether or not prisoners enjoy a generalized right to "petition," we have recognized in them a First Amendment right to access to the courts. *Brown v. Blaine*, 833 A.2d 1166, 1171 (Pa. Cmwlth. 2003). Before a prisoner may exercise that right, however, he must exhaust administrative remedies available to address his grievance. *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014). One such

---

[2] We take judicial notice of DOC's policies in its Inmate Handbook, all of which appear on its official website at: https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited Sept. 12, 2019). *See Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website).

remedy is the inmate grievance process, which is guaranteed to inmates in DOC regulations and set forth in detail in the Inmate Grievance System Policy. *See* 37 Pa. Code § 93.9; DC-ADM 804. "The Policy requires an inmate who has received an initial determination on his grievance to appeal to the [s]uperintendent and, thereafter, seek final review with DOC. If the inmate fails to complete each of these steps, he fails to exhaust his administrative remedies." *Kittrell*, 88 A.3d at 1095. If, therefore, DOC denies an inmate use of the grievance process, it violates his protected right of access to the courts by preventing exhaustion of his administrative remedies, and he can assert a claim for that violation. *See Brown*, 833 A.2d at 1171.

Bronson attempts to state just such a claim here—that DOC denied him use of the grievance process altogether, thereby violating his First Amendment rights. As DOC points out, however, Bronson fails to make detailed factual allegations of the manner in which DOC accomplished the alleged constitutional violation. The Petition itself contains no detailed statement of a particular attempted grievance, event, or date, but merely a general allegation that DOC prevented him from filing grievances. Although Bronson does make a vague reference without explanation to a particular attempted grievance in his brief, we cannot consider that factual allegation because it is outside the four corners of the Petition. *Seitel Data, Ltd.*, 92 A.3d at 862. The absence of detailed factual allegations from the Petition is fatal to Bronson's claim. *See Ex rel. Corbett*, 49 A.3d at 507. Accordingly, we will sustain DOC's preliminary objection to Claim H.

### C. Claim I—Prison Employment

In Claim I, Bronson alleges that Section 1(M)(7) of the Inmate Compensation Manual, DC-ADM 816 § 1(M)(7), violates his right to due process.

6

That section authorizes "[r]emoval of an inmate from a work assignment for reasons other than misconduct" after a supervisor submits a written statement of the reasons for removal. DC-ADM 816 § 1(M)(7). Bronson first argues that this policy deprives him of a protected property interest (his prison job and pay) without due process in violation of the Fourteenth Amendment to the United States Constitution. He also argues that the policy violates DOC's regulation governing inmate discipline, 37 Pa. Code § 93.10 (the Inmate Discipline Regulation). In response, DOC argues that Bronson has no right to his prison job and has not alleged sufficiently specific facts to identify when or how he was demoted or removed.

"To maintain a due process challenge, a party must initially establish the deprivation of a protected liberty or property interest. If, and only if, the party establishes the deprivation of a protected interest . . . will the Court consider what type of procedural mechanism is required to fulfill due process." *Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017) (citation omitted). Consistent with settled law, Bronson concedes in his brief that he "does not have a right to [his] job." (Petitioner's Br. at 8-1.) He cannot, therefore, state a due process claim under the Fourteenth Amendment. *Shore*, 168 A.3d at 383.

Even where DOC's policies satisfy constitutional requirements, however, this Court has recognized that an inmate has a claim against DOC when it violates the Inmate Discipline Regulation. *See Bush v. Veach*, 1 A.3d 981, 985 (Pa. Cmwlth. 2010). The Inmate Discipline Regulation allows DOC to impose sanctions for misconduct (and only for misconduct), but it requires that DOC follow certain procedures before doing so.[3] We have held that DOC must follow those procedures

---

[3] Those procedures are: (1) written notice of charges; (2) a hearing before an impartial hearing examiner or an informal resolution process for less serious charges specified in the Inmate

7

whenever it sanctions an inmate for misconduct, even if that misconduct is job related. *Williams v. Wetzel*, 178 A.3d 920, 924 (Pa. Cmwlth. 2018). DOC may not use the job removal provision of DC-ADM 816 to circumvent the procedures of the Inmate Discipline Regulation when "misconduct [is] the impetus underlying [the job removal or demotion]." *Id.* at 925.

Here, the Petition does not specifically allege that DOC removed or demoted Bronson or any other inmate for misconduct. Indeed, it suggests otherwise, stating that inmates were removed "at the whim of staff," or arbitrarily. (Petition, ¶ 12.) Unlike the inmate in *Williams*, Bronson does not allege that DOC used job removal as a pretext to punish misconduct without due process. The Inmate Discipline Regulation, unlike the job removal process, applies only when DOC addresses misconduct. Because the Petition does not allege misconduct, it fails to state a claim that would allow us to address any alleged violation of the Inmate Discipline Regulation. Accordingly, we will grant DOC's preliminary objection to Claim I.

### D. Claim J—Deduction of Pay and Funds

In Claim J, Bronson alleges that DOC has wrongfully confiscated his prison job pay and other funds over many years in an attempt to collect debts from him. He essentially argues that DOC's confiscations infringe upon his constitutionally protected property interest without due process. Other than mentioning due process, the Petition does not specify the legal theory underlying this claim. In response, DOC asserts its statutory authority to collect court-ordered

---

Handbook; (3) an opportunity for the inmate to tell his story and present relevant evidence; (4) assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively; (5) a written statement of the decision and reasoning of the hearing body based upon the preponderance of the evidence; and (6) an opportunity to appeal the decision in accordance with the Inmate Handbook. 37 Pa. Code § 93.10(b).

costs from inmates under what is commonly known as Act 84, Act of June 18, 1998, P.L. 640, which created Section 9728(b)(5) of the Sentencing Code, 42 Pa. C.S. § 9728(b)(5). DOC then argues, based on Bronson's admissions that the deductions are to recover debts and have been ongoing for many years, that Act 84's two-year statute of limitations bars Bronson's claim. Bronson responds, in his brief, by insisting that his claim is based on due process and not Act 84.

Act 84 authorizes DOC to "make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation." 42 Pa. C.S. § 9728(b)(5). We have held that such deductions are not themselves punitive but merely allow collection of fines and costs already lawfully imposed on the inmate. *See Harding v. Stickman*, 823 A.2d 1110, 1112 (Pa. Cmwlth. 2003). In *Harding*, an inmate sought to enjoin DOC's Act 84 deductions, in part because DOC had not allowed him a hearing. We sustained DOC's preliminary objections, noting that the inmate did not challenge the legality or due date of the underlying fines. *Id.* We observed that Act 84 generally authorizes DOC's collection of money already subject to court order and held that "[the inmate] may not challenge the substance of the court's order by seeking an injunction against DOC." *Id.* Similarly, in *Department of Corrections v. Tate*, 133 A.3d 350, 358 (Pa. Cmwlth. 2016), we sustained DOC's preliminary objections because the inmate's petition for review alleged that DOC had not afforded him a pre-deduction hearing—process to which he was not entitled under Act 84. We also observed that the petition suggested the inmate was aware that he owed fines and costs and that he received notice that deductions would commence. *Id.*

Claim J of the Petition is similar to the petitions in *Harding* and *Tate*. It does not allege any abuse of the Act 84 process itself, but appears to challenge

9

DOC's authority to make deductions in general. The Petition admits that DOC's deductions from Bronson's accounts were made in order to collect debts. It does not allege that the deductions were factually suspect—*i.e.*, that they were not the type authorized under Act 84 or were improperly calculated. The Petition asserts a right to a separate, pre-deduction hearing, but that is an incorrect statement of law which we need not accept as true. *See Harding*, 823 A.2d at 1112. The Petition does not, therefore, state a claim for relief with respect to DOC's deduction procedures, but rather it attempts to challenge either the underlying fines or DOC's Act 84 authority. As we have explained, neither of those challenges would allow Bronson to prevail, and we will, therefore, grant DOC's preliminary objection to Claim J.[4]

### E. Claim K—Housing

In Claim K, Bronson alleges that DOC officials used the inmate housing process to retaliate against him for lawsuits he has filed. Specifically, he claims that DOC annotated his record with certain "codes" based on erroneous information contained in his files in violation of DOC's policies. Because of those annotations, he cannot share a cell with another inmate, participate in some programs and benefits, or remain in any one housing area for an extended time. In his Brief, Bronson makes clear that Claim K is a claim for retaliation and further alleges that DOC's housing determination was based on a fraudulent factual record. DOC's response to Claim K is twofold. First, it argues that Bronson has not stated facts in the Petition sufficient to satisfy the elements of a retaliation claim. Second, DOC insists that, because Bronson has no right to be confined as he chooses, we must defer to DOC's housing judgments.

---

[4] Given this disposition, we need not address the statute of limitations issue that DOC has raised.

A prison retaliation claim arises when "the inmate engaged in constitutionally protected conduct, prison officials took adverse action, and the protected conduct was a substantial or motivating factor for the action." *Yount v. Dep't of Corr.*, 966 A.2d 1115, 1120 (Pa. 2009). Importantly, however, "[a] change of [an inmate's] custody level and his subsequent transfer cannot be considered adverse actions for the purpose of a prison retaliation claim." *Mays v. Kosinski*, 86 A.3d 945, 949 (Pa. Cmwlth. 2014); *see also* 37 Pa. Code § 93.11(a) ("An inmate does not have a right to be housed in a particular facility or in a particular area within a facility."). In *Mays*, the inmate alleged that DOC officials increased his custody level for no other reason than to retaliate against his filing of a grievance. Taking that allegation as true, we sustained DOC's preliminary objections because a housing determination is not an adverse action for purposes of a retaliation claim. *Mays*, 86 A.3d at 949.

Bronson's claim here is virtually identical to that in *Mays*. He alleges that DOC officials increased (or alternatively, refused to decrease) his housing classification in order to retaliate against his use of the judicial system. Taking the allegations in Claim K as true, Bronson has failed to state a claim because he has not alleged DOC actions that legally constitute adverse action as part of a retaliation claim (the only legal basis he identifies for Claim K). Accordingly, we will sustain DOC's preliminary objection to Claim K.

11

## III. CONCLUSION

For the foregoing reasons, we conclude that Claims A, B, and H through K of the Petition fail to state claims for which we could grant relief. Accordingly, we will sustain DOC's preliminary objections in the nature of a demurrer to those claims in particular.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Purcell Bronson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 576 M.D. 2018 |
| | : | |
| John Wetzel, Secretary of DOC; | : | |
| and his agents: Barry R. Smith, | : | |
| Superintendent; Crystal Loy, Unit | : | |
| Manager, Kelly Latterner, Counselor, | : | |
| and Tab Bickell, Deputy Secretary, | : | |
| Respondents | : | |

# **O R D E R**

AND NOW, this 13th day of September, 2019, we SUSTAIN Respondents' preliminary objections to Claims A, B, and H through K of Petitioner Purcell Bronson's Petition for Review (Petition). Respondents shall file an answer to the remaining claims of the Petition within thirty (30) days of the date of this order.

_____
P. KEVIN BROBSON, Judge