[J-99-2020] [MO: Saylor, C.J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| AQUIL JOHNSON, | : | No. 18 EAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order entered on |
| | : | June 3, 2019 in the Commonwealth |
| | : | Court at No. 497 MD 2018. |
| v. | : | |
| | : | |
| | : | |
| JOHN WETZEL, SECRETARY PA. D.O.C., | : | |
| MARK GARMAN, SUPER., S.C.I. | : | |
| ROCKVIEW ET AL., OFFICERS, AGENTS, | : | |
| SERVANTS, EMPLOYEES AND | : | |
| ATTORNEYS, | : | SUBMITTED: September 30, 2020 |
| | : | |
| Appellees | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                                   **DECIDED: October 1, 2020**

I join the Majority's important holding that the due process protections outlined in *Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018), "appl[y] to inmates whose accounts were subject to Act 84[1] deductions without the benefit of pre-deprivation safeguards." Maj. Op. at 13. Accordingly, I agree that further factual development upon remand is required to determine whether Aquil Johnson was afforded these due process protections. *See id.* at 14-15. Additionally, I agree with the Majority that Johnson was not entitled to an ability-to-pay hearing. *See id.* at 15-16. Unlike the Majority, however, *see id.* at 9-13, it is apparent to me that Johnson has pleaded a viable negligence claim at this stage of the litigation. And I would hold that the question of whether the statute of limitations should

---

[1]     *See* Act of June 18, 1998, P.L. 640, No. 84, § 4 (codified at 42 Pa.C.S. § 9728).

be tolled because of alleged fraudulent concealment by the Department of Corrections ("DOC") is a question for the factfinder. Thus, I respectfully dissent from the Majority's decision to affirm the Commonwealth Court's dismissal of Johnson's negligence claim.

## I. Negligence

DOC has lodged preliminary objections to Johnson's negligence claim in the form of a demurrer. "[W]hen this Court reviews rulings on preliminary objections, we deem all material facts averred in the complaint, and all reasonable inferences that can be drawn therefrom, to be true." *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1022 (Pa. 2018). Thus, we must accept all of Johnson's factual averments as true at this stage of the litigation.

The standard for determining whether a claim can survive preliminary objections is a liberal one. "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1054 (Pa. 1996) (citation and internal quotation marks omitted); *see also Golden Gate*, 194 A.3d at 1022 ("When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.") (citation and internal quotation marks omitted).

Johnson's Amended Petition for Review divides his factual allegations into two sections. First, Johnson makes "allegations common to all claims." Amended Petition for Review ("Amended Petition"), 497 MD 2018, at 4 (capitalization modified). In this section of the Amended Petition, Johnson writes that he "consulted with the inmate counselor Scott Gaines through request slip inquiring about the nature of the deduction" at issue in this case. *Id.* ¶ 16. According to Johnson, "Counselor Scott Gaines told

[Johnson] that the deductions were lawful and that the only way to stop them is to pay the full amount of money owed." *Id.* To support this narrative, Johnson cites Exhibit-FC of his original Petition for Review. That exhibit is an "Inmate's Request to Staff Member" submitted by Johnson to Gaines. *See* Petition for Review, 497 MD 2018, Exhibit-FC. After Johnson asked Gaines why money was deducted from his account, Gaines wrote back: "The inmate accounts office informed me the Act 84 withdraw[al]s are lawful taking of money from your inmate account to pay the amount of restitution and fines you owe which will only be stopped if you pay the full amount." *Id.*

The next section of Johnson's Amended Petition makes factual allegations related to "negligence in handling [Johnson's] private personal property." Amended Petition at 6 (capitalization modified). Despite this section of the complaint being devoted to the negligence claim, Johnson seemingly alleges intentional conduct by DOC. For example, Johnson avers that DOC "*knew* that notice and an opportunity to object was required" and that, despite this knowledge, DOC "proceeded to and continued to negligently deduct funds from [Johnson's] inmate account and continues to deduct funds till this day." *Id.* ¶ 24 (emphasis added).

The Majority correctly concludes that Johnson's allegations in paragraphs sixteen and twenty-four appear to be "internally inconsistent." Maj. Op. at 11. However, whereas the Majority would resolve that inconsistency by concluding that Johnson has not stated a viable claim for negligence,[2] I instead would apply our previous instruction that the Commonwealth Court could not dismiss Johnson's claim unless "the law says with certainty that no recovery is possible." *MacElree*, 674 A.2d at 1054 (citation and internal quotation marks omitted). Reading the allegations in the light most favorable to Johnson,

---

[2] I note that neither the Majority nor the Commonwealth Court hold that Johnson's negligence claim falters for any reason aside from the belief that Johnson has alleged intentional conduct only.

as the plaintiff, I cannot join the Majority or the Commonwealth Court in concluding with certainty that Johnson has not pleaded a claim for negligence.

In paragraph sixteen, Johnson alleges that Gaines, as a representative of DOC, negligently informed him that the deduction of funds from his account without notice was a "lawful taking of money." Exhibit-FC. At this stage of the litigation, we must accept the conclusion that Gaines' reliance upon the accounts office's information was a negligent action because our precedent requires that "*all reasonable inferences* that can be drawn" from the facts averred in a complaint "be [deemed] true." *Golden Gate*, 194 A.3d at 1022 (emphasis added). It is a reasonable inference that Gaines did not *knowingly* tell Johnson that the deductions were legally sound. It is reasonable to believe that Gaines did not research the issue of deductions himself and gain such knowledge. Paragraph sixteen of the Amended Petition does not allege that Gaines had such knowledge, and, without proof that such an inference is unreasonable, this Court cannot affirm the dismissal of Johnson's negligence claim upon such a basis.

But to further illustrate why paragraph sixteen alleges negligent conduct, we need not rely solely upon inferences from Johnson's complaint. After Johnson filed a grievance with DOC, DOC itself told Johnson that it "cannot provide an explanation as to what happened to the original notice." Petition for Review, 497 MD 2018, Exhibit-GR. DOC did not assert that Gaines purposefully misled Johnson as to the legality of the deductions. DOC did not tell Johnson that Gaines knowingly conveyed false information. Nor did DOC say that Gaines even recklessly allowed the deductions to continue. Without any affirmative proof in the record to show that the actions of Gaines and DOC were anything other than negligent, we have no choice but to accept as true Johnson's allegation of negligence for the purposes of adjudicating DOC's demurrer.

To be sure, Johnson's complaint is not the most artfully drafted petition for review. That Johnson mentions intentional conduct in the section of the Amended Petition pertaining to the negligence claim perhaps sows some confusion, and ultimately leads the Majority astray. This allegation of intentional conduct does raise doubts as to the true nature of Johnson's claim. But "[w]here a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *MacElree*, 674 A.2d at 1054 (citation and internal quotation marks omitted). Johnson never disavows his allegation of the negligent conduct from paragraph sixteen. Faced with a possible inconsistency, our precedent demands that we construe the two provisions to serve the advancement of Johnson's claims if possible. In this case, such a construction is possible. Thus, I would hold that Johnson has stated a claim for negligence[3] that is sufficient to survive DOC's preliminary objections.[4] Having concluded that Johnson has

---

[3] The Majority notes that "negligent conduct does not implicate the Due Process Clause." Maj. Op. at 10 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). There is nothing to stop Johnson from making claims sounding in both intentional and negligent conduct at this stage of the litigation. *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (Pa. Super. 2000) (adjudicating claims relating to intentional infliction of emotional distress and negligent infliction of emotional distress related to the same underlying facts at the summary judgment stage of the litigation).

[4] Although I conclude that Johnson's negligence claim survives DOC's preliminary objections under this Court's precedent, I also note that the Commonwealth Court has adopted an even more liberal standard for reading complaints submitted by *pro se* litigants. Relying upon case law from the Supreme Court of the United States, the Commonwealth Court logically has found that "the allegations of a *pro se* complaint . . . are held to a less stringent standard than that applied to the formal pleadings drafted by attorneys." *Reider v. Bureau of Corr.*, 502 A.2d 272, 273 (Pa. Cmwlth. 1985) (*en banc*) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that the High Court "holds" a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers")). *See also Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004) (*en banc*) ("The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys."), *aff'd*, 881 A.2d 1263 (2005); *Dep't of Corr. v. Tate*, 133 A.3d 350, 354 n.8 (Pa. Cmwlth. 2016) (same).

pleaded a viable negligence claim, I proceed to examine DOC's assertions that the claim nonetheless should be dismissed because of qualified immunity and the statute of limitations.

## II. Qualified Immunity

DOC argues that Johnson's claims "are barred by qualified immunity." DOC's Brief at 16. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Qualified immunity applies to actions in which an individual alleges a violation of his or her federal constitutional rights under 42 U.S.C. § 1983. *See Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) ("An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.") (internal quotation marks omitted). DOC does not specifically argue that qualified immunity should bar Johnson's negligence

This Court has held that *pro se* litigants cannot be excused for failing to abide by procedural rules. *See Peters Creek Sanitary Auth. v. Welch*, 681 A.2d 167, 170 n.5 (Pa. 1996). And this Court has noted that the High Court's decision in *Haines* "does not say that a *pro se* defendant is entitled to special treatment at trial." *Commonwealth v. Blakeney*, 946 A.2d 645, 656 n.5 (Pa. 2008). But this Court has not overruled *Reider*, *Danysh*, *Tate*, or any other Commonwealth Court decision regarding the standard for interpreting a *pro se* litigant's complaint.

Thus, although the Commonwealth Court's relaxed standard for *pro se* litigants is not binding upon this Court, those published decisions bind the Commonwealth Court itself, especially in an unpublished memorandum such as the decision below. *See Pries v. Workers' Comp. Appeal Bd. (Verizon Pa.)*, 903 A.2d 136, 144 (Pa. Cmwlth. 2006) ("Under *stare decisis*, we are bound to follow the decisions of our Court unless overruled by the Supreme Court or where other compelling reasons can be demonstrated."). It does not appear that the Commonwealth Court took into account its own published decisions when reviewing Johnson's Amended Petition. Application of the Commonwealth Court's own *pro se* litigant standard adds further support to the contention that the lower court erred by dismissing the negligence claim.

claim, which is a state common law cause of action. *See* DOC's Brief at 16-17. Even assuming that qualified immunity, or some similar doctrine, should apply to Johnson's negligence claim, the Commonwealth Court, in a thorough analysis, rejected the argument that DOC employees enjoyed qualified immunity:

> Johnson asserts it was clearly established by June 2013 that he should have received pre-deprivation notice and an opportunity to object prior to the first deduction being made. The first case that definitely addressed the issue, *Montanez v. Secretary of Pa. Dep't of Corr.*, 773 F.3d 472 (3d Cir. 2014), was not decided until 2014, after the first deduction occurred. This Court, as late as 2016, held that *Montanez* was only instructive and not binding. *Dep't of Corr. v. Tate*, 133 A.3d 350, 358 n.11 (Pa. Cmwlth. 2016). It was not until 2018 when the Supreme Court decided *Bundy I*, that it was clear that such pre-deprivation process was required for Act 84 deductions as a matter of state law. However, the other federal and Pennsylvania cases Johnson relies upon, which [DOC] do[es] not address in their brief, do constitute at least a consensus of persuasive authority suggesting that "a reasonable [government official] could not have believed that [the official's] actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).
>
> In 2002, the United States Court of Appeals for the Third Circuit held in *Higgins v. Beyer*, which involved deductions from an inmate's federal veteran's disability benefits that had been deposited in his inmate account, that the inmate had stated a claim for a violation of his due process rights because the prison officials did not provide him with pre-deprivation notice and hearing prior to deducting the money, in which he had a property interest. 293 F.3d 683, 691, 693-94 (3d Cir. 2002). In 2009, the Third Circuit issued a decision, *Montanez v. Beard*, vacating and remanding the dismissal of a group of inmates' due process claims based on the withdrawal of monies for court-ordered costs and restitution under Act 84 without notice or an opportunity to object. 344 F. App'x 833, 834-35 (3d Cir. 2009). The Court held that it had addressed the issue before in a non-precedential opinion in 2006 and that, as in that prior decision, the inmates **"allege[d] sufficient facts to support a [] claim . . . that [they were] deprived of [their] rights under the Due Process Clause of the Fourteenth Amendment."** *Id.* at 837 (citing *Hale v. Beard*, 168 Fed. App'x. 532 (3d Cir. 2006) (emphasis added)). In 2011, the Third Circuit held, in *Burns v. Department of Corrections*, that the Department's assessment of an inmate's account for medical expenses imposed as a part of the inmate's internal discipline for a fight was an "impairment of a cognizable property interest" and that the inmate was **"entitled to due process with respect to any deprivation of money"** from his account. 544 F.3d 279, 281, 286 (3d Cir. 2008) (emphasis added). Notably, in the Third Circuit's 2014

*Montanez* decision, the Court cited its 2009 decision in that case, *Hale*, *Burns*, *Higgins*, and *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997), and held that "[t]aken together, these cases **make clear** that when pre-deprivation process could be effective in preventing errors, **that process is required."** *Montanez*, 773 F.3d at 484 (emphasis added).

Johnson also asserts there are decisions from this Court, filed before the deductions from his account began in 2013, which similarly provide that where money is taken from an inmate's account, due process requires the inmate be given reasonable notice and an opportunity to be heard prior to the deduction. *Holloway v. Lehman*, 671 A.2d 1179, 1181-82 (Pa. Cmwlth. 1996). Johnson notes that *Holloway* has been the law since 1996 and had been cited in numerous published cases prior to 2013. In addition, Johnson cites the Department's Policy, Section 3 of DC-ADM 005, which sets forth the procedures for the collection of inmate debts. Johnson asserts the Policy's requirement that an inmate is entitled to a "Notification of Deductions Memo," has been in effect since 2007, and that requirement was recognized in the response he received to his grievance, which stated that there was no "explanation as to what happened to the original notice" in 2013. (Johnson's Br. at 26; Initial Petition, Ex. GR.) While the Department's administrative policies do not create rights for inmates, *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017), and [DOC] state[s] in their brief that Section 3 was changed "to meet the requirements outlined in" *Montanez*, ([DOC's] Br. at 12 n.2), the response to Johnson's grievance, which upheld the lack of notice part of the grievance, suggests some kind of pre-deduction notice was the norm, even in 2013.

Reviewing these cases and the allegations, we cannot agree with [DOC] that it is clear on the face of the pleadings that they would be entitled to qualified immunity to allow this defense to be raised as a preliminary objection or that Johnson has not stated a claim upon which relief can be granted based on their having immunity. Therefore, Johnson's [preliminary objection] challenging the demurrer on that basis is sustained, and [DOC's] preliminary objection] is stricken.

*Johnson v. Wetzel*, 497 MD 2018, 2019 WL 2400295, at *8-9 (Pa. Cmwlth. June 3, 2019) (citations modified). I would adopt this reasoning and hold that, assuming *arguendo* that qualified immunity or a similar doctrine applied to Johnson's negligence claim, the due process rights highlighted by this Court in *Bundy* were "clearly established at the time of the challenged conduct," *Plumhoff*, 572 U.S. at 778 (internal quotation marks omitted),

*i.e.*, when Johnson first was deprived of pre-deprivation notice and an opportunity to object in June 2013.

### III. Fraudulent Concealment

Finally, the Commonwealth Court held that Johnson's claim was barred by the statute of limitations and that Johnson could not show that the statute was tolled under the doctrine of fraudulent concealment. *See Johnson*, 2019 WL 2400295, at *10-11. The statute of limitations for a negligence claim is two years. 42 Pa.C.S. § 5524. Johnson avers that the first Act 84 deduction occurred in June 2013. He did not file suit until July 2018. Thus, Johnson's negligence claim facially is time-barred, unless the statute of limitations was tolled for some reason.

Johnson alleges that the doctrine of fraudulent concealment tolls the statute here. As this Court previously has explained:

> [T]he doctrine of fraudulent concealment serves to toll the running of the statute of limitations. The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. *Deemer v. Weever*, 187 A. 215, 215 (Pa. 1936). The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. *Id.* The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence. *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987). While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made. *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 476 (Pa. 1964).

*Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (citations modified).[5]

---

[5]   Although this Court captioned the case "Fine v. Checcio," it appears that we may have misspelled the latter party's surname. The Superior Court captioned the case as "Fine v. Checchio." *See Fine v. Checchio*, 2757 EDA 2002, 829 A.2d 369 (Pa. Super. 2003) (table); *Fine v. Checchio*, 2757 EDA 2002, 890 A.2d 1110 (Pa. Super. 2005) (table). And when a party attempted to appeal the case to this Court a second time, we used

**A. Misrepresentations of Law**

As an initial matter, the Majority asserts that "[t]his Court has never applied" the doctrine of fraudulent concealment "to an assertion that the defendant misrepresented the current state of the *law*," as opposed to the defendant misrepresenting a fact. Maj. Op. at 12 (emphasis in original). In *Fine*, this Court did state that the doctrine applies if a defendant "causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the *facts*." *Fine*, 870 A.2d at 860 (emphasis added). However, the alleged concealments in *Fine* were based upon misrepresentations of fact. *See id.* at 862 ("Fine based his assertion for the application of the doctrine on post-surgery statements he attributed to Dr. Checc[h]io."); *id.* at 863 ("This is because the record shows that the statements that Dr. Rice made to Ward about the numbness during post-operative visits are disputed."). Although this Court used the phrase "inquiry into the facts" in *Fine*, it does not appear that we considered whether the doctrine of fraudulent concealment would apply to a misrepresentation of law. Thus, this issue is one of first impression.

Some courts in other jurisdictions have allowed misrepresentations of law to serve as the basis for fraudulent concealment. *See, e.g., Ritchie v. Clappier*, 326 N.W.2d 131, 133 (Wis. Ct. App. 1982) ("Where one who has had superior means of information professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed, the injured party is entitled to relief as well as if the misrepresentation [of law] had been concerning matter of fact.") (internal quotation marks and citation omitted); *Tompkins v. Hollister*, 27 N.W. 651, 654-55 (Mich. 1886) ("The statute, however, by its terms, refers to the fraudulent concealment of the cause of action, which would be applicable to a

---

"Checchio." *See Fine v. Checchio*, 897 A.2d 1184 (Pa. 2006) (*per curiam*) (denying *allocatur*).

concealment of law as well as of fact."). Other courts have limited the doctrine to misrepresentations of fact. *See, e.g.*, *Rice v. Ragsdale*, 292 S.W.3d 856, 864 (Ark. Ct. App. 2009) ("As a general rule, fraud cannot be predicated upon misrepresentations as to matters of law, nor upon opinions on questions of law based on facts known to both parties."); *Feit v. Donahue*, 826 P.2d 407, 412 (Colo. App. 1992) ("However, if the representation concerns law, not fact, it is an expression of opinion and is not actionable.").

"As described by the Supreme Court [of the United States] more than a century ago, the purpose of the fraudulent-concealment doctrine is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'" *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874)). The fraudulent concealment doctrine, which is based upon estoppel, has its basis in equity. Courts employing this doctrine have applied it broadly. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("This equitable doctrine [of fraudulent concealment] is read into every federal statute of limitation."); *see also* Richard F. Schwed, *Fraudulent Concealment, Self-Concealing Conspiracies, and the Clayton Act*, 91 MICH. L. REV. 2259, 2262 (1993) ("Even without any basis in statutory language, courts have long been willing to toll statutes of limitation."). In Pennsylvania, in particular, we have interpreted fraud "in the *broadest sense.*" *Fine*, 870 A.2d at 860 (emphasis added). The breadth of the doctrine and its remedial nature might justify including particular misrepresentations of law[6] under the

---

[6] In particular, other courts have opined that misrepresentations of law should toll statutes of limitations under the doctrine of fraudulent concealment where the plaintiff is especially vulnerable to relying upon the defendant's legal statements. *See, e.g.*, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) ("Where the party making the misrepresentation 1) purports to have special knowledge; 2) stands in a fiduciary or

doctrine of fraudulent concealment.  However, because I find that Johnson's allegation of fraudulent concealment, for the purposes of surviving preliminary objections, is an implied misrepresentation of fact, I do not believe there is any need to reach the issue of whether a misrepresentation of law alone falls under the doctrine of fraudulent concealment.[7]

**B. Implied Misrepresentations of Fact**

"There is oftentimes a delicate line between questions of law and of fact."  *Jolley v. Jolly*, 220 S.E.2d 882, 884 (S.C. 1975).  The Restatement (Second) of Torts suggests that, while opinions of a legal nature cannot form the basis of fraudulent misrepresentation, a misrepresentation of law that implies a misrepresentation of fact should be treated as any other misrepresentation of fact:

> (1) If a misrepresentation as to a matter of law includes, expressly or by implication, a misrepresentation of fact, the recipient is justified in relying upon the misrepresentation of fact to the same extent as though it were any other misrepresentation of fact.

similar relation of trust and confidence to the recipient; 3) has successfully endeavored to secure the confidence of the recipient; 4) or has some other special reason to expect that the recipient will rely on his opinion, misrepresentations of law may result in actionable fraud."); *Garsee v. Indem. Ins. Co. of N. Am.*, 47 S.W.2d 654, 657 (Tex. Civ. App. 1932) ("[R]edress may be had if one party possessed superior knowledge and took advantage of the other party's ignorance of the law to mislead him by studied concealment or by misrepresentation, and this is especially true where confidential relations obtained."); *see also* 173 A.L.R. 576, § 7 ("Fraudulent misrepresentation of the state of the law, or the withholding of information as regards thereto, may constitute a fraudulent concealment, where a fiduciary or other confidential relationship exists between the parties.").

It is difficult to imagine a circumstance where a plaintiff is more vulnerable than that of an incarcerated individual relying upon the statements of his jailers.  *Cf. Commonwealth v. Burton*, 158 A.3d 618, 636-37 (Pa. 2017) (noting the arguments of *amicus curiae* Pennsylvania Exonerees as to the multitude of problems associated with incarcerated individuals performing legal research).

[7]    The Majority's musings on this topic also are *dicta*.  The Majority concludes that Johnson did not state a legally cognizable claim for negligence.  *See* Maj. Op. at 9-11. Thus, the Majority did not need to reach the fraudulent concealment issue to dismiss Johnson's negligence claim.

(2) If a misrepresentation as to a matter of law is only one of opinion as to the legal consequences of facts, the recipient is justified in relying upon it to the same extent as though it were a representation of any other opinion.

Restatement (Second) of Torts § 545 (Misrepresentation of Law); *see also id.* cmt. c. ("Even though the language of a representation concerns only legal consequences and is in form an expression of opinion, it may, as in the case of any other statement of opinion, carry with it by implication the assertion that the facts known to the maker are not incompatible with his opinion or that he does know facts that justify him in forming it.").

Other courts have relied upon a similar distinction in allowing fraud claims to proceed on statements of law that imply a misrepresentation of fact. *See, e.g.*, *Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 696, 698 (9th Cir. 2013) (quoting the Restatement and holding that "Wal-Mart's sign and receipt may well have implied a factual assertion that California, not Wal-Mart, would receive the recycling fee"); *Martinez v. Martinez*, 83 P.3d 298, 301 (N.M. Ct. App. 2003) ("While Husband attested that Wife knew about his ownership interest in the contested property before the divorce, Wife attested that she had no reason to disbelieve Husband's representation that the property was his sole and separate property until she consulted an attorney many years after the divorce. This is a classic fact dispute best resolved by the fact finder."); *Garsee v. Indem. Ins. Co. of N. Am.*, 47 S.W.2d 654, 656-57 (Tex. Civ. App. 1932) ("But it is equally well settled that misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood."); *see also Rhodeman v. Ocwen Loan Servicing, LLC*, 2019 WL 5955368, at *13 (C.D. Cal. Nov. 12, 2019) (quoting from and applying *Johnson*).

The Restatement provides a few examples of such implied statements of fact:

[T]he statement that the maker has good title to land, although in form one of a legal conclusion, ordinarily will be understood to assert the existence of those conveyances or other events necessary to vest good title in him. So likewise a statement that one mortgage has priority over another may

imply an assertion that one was made before the other; and a statement that a corporation has the legal right to do business in a state may carry with it an assurance that it has as a matter of fact taken all of the steps necessary to be duly qualified.

*       *       *

A, seeking to sell frozen fish to B, fraudulently informs B that there is no legal maximum price on frozen fish. B reasonably understands A to assert that government authorities regulating prices have not established any maximum price for the commodity, although they have in fact done so. In reliance on the implied assertion, B buys the fish from A and suffers pecuniary loss. A is subject to liability to B.

Restatement (Second) of Torts § 545, cmt. c., Illustration 2.

Meanwhile, with regard to pure misrepresentations of law, the Restatement notes that "[a] representation of law that might otherwise imply assertions of fact may be so clearly a statement solely of opinion that it does not carry an implication of fact." *Id.* cmt. d. An example of this pure opinion type of statement is the following: "Thus one who says, 'I think that my title to this land is good, but do not take my word for it; consult your own lawyer,' is not reasonably to be understood as asserting any fact at all with respect to the title." *Id.* And a statement is more likely to be a pure opinion if "all of the facts are known to both parties or are assumed by both of them to exist." *Id.* In particular, if the parties are on equal footing, the statement is more likely to be a pure opinion. *See id.* ("[I]f both parties to the transaction are real estate dealers, neither may justifiably assume that the other has so superior a knowledge of the law as to make his opinion a reliable guide.").

With this in mind, I interpret Johnson's allegations of fraudulent concealment as an inference of misrepresentations of fact on the part of Gaines. In his Amended Petition, Johnson wrote that Gaines told him "that the deductions were lawful and that the only way to stop them is to pay the full amount of money owed." Amended Petition ¶ 16. Gaines himself informed Johnson that, based upon information relayed to Gaines from

the accounts office, "the Act 84 withdraw[al]s are lawful taking of money . . . which will only be stopped if you pay the full amount." Petition for Review, Exhibit-FC.

Johnson's allegation and Gaines' own written statement are similar to the Restatement's examples. A statement that one "has good title to land, although in form one of a legal conclusion, ordinarily will be understood to assert the existence of those conveyances or other events necessary to vest good title in him." Restatement (Second) of Torts § 545, cmt. c. Similarly, Gaines told Johnson that the deductions from Johnson's account, without pre-deprivation notice, were "lawful." That Gaines told Johnson that the deductions were legal implied a factual basis for DOC to make the deductions. But Gaines made this statement despite the fact that, by June 2013, it had been established that DOC was required to provide pre-deprivation notice to incarcerated individuals. *See Johnson*, 2019 WL 2400295, at *8-9; *supra* Part II. Additionally, Gaines' statement that the deductions were "lawful," despite contemporary legal rulings with the opposite conclusion, is like the seller of a product "fraudulently inform[ing]" a buyer "that there is no legal maximum price on" the product, despite the fact that "government authorities . . . have in fact" set such a maximum price. Restatement (Second) of Torts § 545, Illustration 2. Thus, although Gaines appeared to be providing Johnson with a legal opinion, the statement was made in such a way as to convey a factual conclusion, namely that the takings "will only be stopped if [Johnson] pay[s] the full amount." Petition for Review, Exhibit-FC; *see also* Petitioner's Answer to Respondent's Preliminary Objections, 497 MD 2018, ¶ 15 ("When [Johnson] inquired about the money missing from his account, D.O.C. Counselor Gaines told [Johnson] that the Act 84 deductions were lawful and that the only way to stop them was to pay the full amount owed.").

Gaines did not reply to Johnson in the form of a pure opinion. He did not write, "I think these takings are legal, but do not take my word for it; consult your lawyer" or

perform your own legal research. *Cf.* Restatement (Second) of Torts § 545, cmt. d. Instead, Gaines' conclusory statement, while based upon the accounts office's (incorrect) reading of the law at the time, implied a fact: Johnson could do nothing to stop the takings. Adding further support to reading Gaines' statement as an implied statement of fact is the circumstance that Johnson and Gaines were not on an equal footing. Gaines and Johnson were not "bargaining adversaries," *id.*; rather Gaines was a prison counselor who was in a position of authority over Johnson. Finally, as noted above, that we have extended the doctrine to "fraud in the broadest sense," *Fine*, 870 A.2d at 860, militates in favor of reading Gaines' response to Johnson as an implied misrepresentation of fact.

"[M]isrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood." *Garsee*, 47 S.W.2d at 656-57. Gaines' statement to Johnson reasonably could be understood to convey a fact that the deductions had legal backing and could not be stopped for any reason until Johnson's fees were paid completely. That implied fact was in opposition to binding case law at the time. Therefore, I would not dismiss Johnson's negligence claim upon this basis.[8]

## C. Diligence

The Commonwealth Court refused to toll the statute of limitations because that court concluded that, as a matter of law, Johnson "was not 'reasonably diligent in informing himself of the facts upon which his recovery may be based.'" *Johnson*, 2019

---

[8] One might be inclined to dismiss Johnson's fraudulent concealment tolling claim upon the basis that, even if Gaines did convey false information to Johnson, that information was provided to Gaines by the accounts office, and Gaines did not knowingly conceal any fact. However, our precedent is clear: "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an *unintentional* deception." *Fine*, 870 A.2d at 860 (emphasis added). Even if Gaines' deception were unintentional, that lack of intent does not preclude Johnson from tolling the statute of limitations by alleging fraudulent concealment.

WL 2400295, at *11 (quoting *Fine*, 870 A.2d at 861). The Commonwealth Court arrived at this conclusion despite noting that the issue of diligence "[o]rdinarily . . . involves a question of fact for the jury." *Id.* at *10 (citing *Fine*, 870 A.2d at 858-59); *see also Gleason v. Borough of Moosic*, 15 A.3d 479, 487 (Pa. 2011) ("Our jurisprudence has recognized that the point at which the complaining party should be reasonably aware that he or she has suffered an injury and should have identified its cause is ordinarily an issue of fact to be determined by the jury due to the fact intensive nature of the inquiry."). Because I agree that the question of diligence should be for the factfinder, I cannot affirm the Commonwealth Court's ruling in this regard.

"[R]easonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine*, 870 A.2d at 858. In deciding whether a plaintiff has exercised diligence in discovering a defendant's negligence, we must keep in mind that "there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." *Id.* (internal quotation marks and citation omitted). Unlike the base negligence claim, which is decided upon a unitary objective reasonable person standard, *see Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998), the diligence standard "take[s] into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question," *Fine*, 870 A.2d at 858 (internal quotation marks and citation omitted). Thus, the reasonable diligence standard, though still objective, differs from the singular reasonable person standard because "the reasonable diligence standard . . . examin[es] not what the plaintiff actually knew, but what a *reasonable person facing the same circumstances confronting the plaintiff at the time in question* would have known upon the exercise of reasonable diligence." *Nicolaou v. Martin*, 195 A.3d 880, 894 (Pa. 2018) (citing *Fine*, 870 A.2d at

858) (emphasis added); *see also* Johnson's Brief at 25 ("Therefore the question is not what a reasonable person would have done but, what a reasonable prisoner would have done in [Johnson's] circumstances.").

Johnson makes a number of factual allegations related to how an individual "facing the same circumstances confronting" him could not have exercised due diligence to discover Gaines' fraudulent concealment of Johnson's right to pre-deprivation due process protections. For example, Johnson writes that he "did not finish high school[,] is poorly educated[, and] has learning disabilities." *Id.* Furthermore, Johnson asked the Commonwealth Court to assess the presence of fraudulent concealment based upon his status as an incarcerated individual. Johnson notes that "the prison literally controls the information that prisoners have access to." *Id.*; *see also Burton*, 158 A.3d at 636-37. With regard to his relationship with Gaines, Johnson contends that Gaines "was in a position of trust" and that Gaines' allegedly fraudulent information "caus[ed Johnson] to relax his vigilance and deviate from his right of inquiry into the facts." Petitioner's Answer to Respondent's Preliminary Objections, 497 MD 2018, ¶¶ 22, 24; *see also* Johnson's Brief at 29 (noting that the "[t]he title counselor is only given to people who are historically in a position of trust" and that the title "clearly indicate[s] some type of duty to [Johnson] in regards to sensitive matters").

The Commonwealth Court responded to these arguments first by declaring that "Johnson does not cite any legal authority to support the proposition that his relationship with [Gaines] is similar to the relationship a physician has with a patient such that his reliance would be justifiable." *Johnson*, 2019 WL 2400295, at *11. Second, the Commonwealth Court asserted that "Johnson does not aver any specific facts or circumstances that support his allegation that [Gaines] 'was in a position of trust.'" *Id.* (quoting Petitioner's Answer to Respondent's Preliminary Objections, 497 MD 2018,

¶¶ 21-22).    Based  upon  this  apparent  lack  of  legal  and  factual  authority,  the Commonwealth Court concluded that "reasonable minds would not differ that society would expect an individual in Johnson's situation to exhibit more diligence in determining the accuracy of a statement that such deductions were lawful in order to protect the individual's interests." *Id.* (internal quotation marks omitted).

The Commonwealth Court fundamentally misunderstood our previous instructions at the preliminary objections phase of litigation.  Johnson's allegations regarding the effect of his background, his status as an incarcerated individual, and his relationship with Gaines are all questions of fact.  Based upon the record before it, the Commonwealth Court had no means to assess, at the preliminary objections stage, whether Johnson justifiably relied upon Gaines' statement that the deductions were lawful.  DOC raised nothing in its preliminary objections that would have proven that Johnson should have been "awakened" to probe the veracity of Gaines' written response.  *See Fine*, 870 A.2d at 858.  In its brief to this Court, DOC makes a general argument that Johnson "does not explain why [Gaines'] response stopped him from exercising common sense or looking into the accuracy of [Gaines'] statement."  DOC's Brief at 14.  Not only does this statement ignore Johnson's arguments to this Court and to the court below, but additionally DOC does not argue with any specificity as to why the factual record does not allow Johnson's claim to proceed past preliminary objections.  It is unclear how the Commonwealth Court was able to arrive at the conclusion that, as a matter of law, a person in Johnson's position could not rely upon Gaines' statement when there was no evidence before that court to support that conclusion.  Indeed, the only facts before the Commonwealth Court when that court made its ruling were those alleged by Johnson himself, which, at the preliminary objections stage, the Commonwealth Court had to accept as true, per this Court's instructions.  *See Golden Gate*, 194 A.3d at 1022.  Only by proceeding past preliminary

objections and allowing the factual record to be developed, possibly through discovery, could the Commonwealth Court make a fully-informed decision about whether Johnson should have exercised diligence with regard to Gaines' legally incorrect statement. Thus, I would remand for further factual development Johnson's attempt to toll the statute of limitations based upon alleged fraudulent concealment.

*          *          *

I express no opinion as to whether Johnson ultimately would be meritorious in his negligence claim. But the question in this case is not whether the Department of Corrections and its employees were negligent in deducting funds from Johnson's account without pre-deprivation notice. Rather, the question is whether Johnson has pleaded a claim sufficient to survive preliminary objections. Based upon the record before the Commonwealth Court, the answer is yes. It is true that Johnson's Amended Petition is not the most sophisticated legal document submitted to a Pennsylvania court. Nor was his attempt to toll the statute of limitations a clear-cut case of fraudulent concealment. But at the preliminary objections stage, we require neither a high degree of sophistication nor a definitive showing of fraudulent concealment. We inquire only "whether, on the facts averred, the law says with certainty that no recovery is possible." *MacElree*, 674 A.2d at 1054 (citation and internal quotation marks omitted). The Majority and the Commonwealth Court apparently believe that such recovery is impossible with regard to Johnson's negligence claim. I disagree. "[D]ismissal of this matter on preliminary objections was premature. Such disposition may prove entirely appropriate at a later stage, such as summary judgment." *Sutton v. Bickell*, 220 A.3d 1027, 1038 (Pa. 2019) (Wecht, J., dissenting). But in this case, and at this stage of the litigation, Johnson has met his burden.

There are many instances in which incarcerated individuals litigate claims that ultimately prove to be meritless. Indeed, the General Assembly implicitly has made such a recognition. *See generally* Prison Litigation Reform Act, Act of June 18, 1998, P.L. 640, No. 84 (codified at 42 Pa.C.S. §§ 6601-08) (erecting barriers for incarcerated individuals to litigate certain claims).[9] But "[n]o matter what the underlying merits of a claim may be, our courts must be open to all those who come before them, seeking to invoke their jurisdiction." *Stockton v. Wetzel*, 228 A.3d 1289, 1290 (Pa. 2020) (Wecht, J., concurring). "We do injustice when we do not give full consideration to each and every individual that seeks relief from our Commonwealth's courts, no matter that individual's incarceration status." *Id.* (Wecht, J., concurring); *cf. Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004) (*en banc*) ("The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys."). Johnson has invoked the Commonwealth Court's jurisdiction. That court erred in dismissing too quickly Johnson's negligence claim. The Majority errs in affirming that dismissal. Accordingly, I respectfully dissent from that portion of the Court's opinion.

Justice Donohue joins the concurring and dissenting opinion.

---

[9] In *Payne v. Department of Corrections*, 871 A.2d 795 (Pa. 2005), this Court struck down certain provisions of the Prison Litigation Reform Act as unconstitutional, in that the General Assembly intruded upon this Court's rulemaking authority under Article V, Section 10(c) of the Pennsylvania Constitution. However, much of the statute remains on the books and still creates certain barriers for incarcerated individuals to bring claims.