Commonwealth of Pennsylvania : 
Department of Corrections : 
Secretary of Corrections : 
John E. Wetzel : 
SCI Pittsburgh Accounting Manager : 
SCI Camp Hill Accounting Manager : 
SCI Chester Accounting Manager : 
SCI Benner Accounting Manager : 
Erie County Court of Common Pleas : 
Judge John Garhart : 
Erie County Common Pleas : 
Clerk of Record John Catalde, : 
                    Respondents : 
                     : 
        v. : 
         : 
Amos Tate, :   No. 614 M.D. 2014
               Petitioner :   Submitted: August 14, 2015

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
             HONORABLE MARY HANNAH LEAVITT, Judge[2]
             HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE COVEY                  FILED: February 8, 2016

       Amos Tate (Tate), pro se, filed an Amended Petition for Review (Amended Petition) in this Court's original jurisdiction, wherein he challenges deductions the Pennsylvania Department of Corrections (Department) made from his inmate account and seeks damages for emotional distress.[3] The Department filed

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[3] Tate filed a Request to Stop Deduction(s) and Return Monies from Inmate's Account in the Erie County Common Pleas Court on November 18, 2014. The matter was transferred to this Court and designated a petition for review. On January 22, 2015, this Court ordered Tate to file an

preliminary objections to dismiss Tate's Amended Petition pursuant to Pennsylvania Rule of Civil Procedure Number 1028(a)(4) due to its failure to state a claim upon which relief may be granted (demurrer). Specifically, the Department avers that (1) Tate received proper due process, and (2) the deductions were authorized regardless of the source from which the inmate's funds were derived. The Department's preliminary objections are currently before the Court.

This Court's review of preliminary objections is limited to the pleadings. *Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Natural Res.*, 909 A.2d 413 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

> [This Court is] required to accept as true the well-pled averments set forth in the . . . complaint, and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

*Id.* at 415-16 (citations omitted).

Tate is incarcerated in the State Correctional Institution in Benner Township, Centre County, Pennsylvania (SCI-Benner). According to Tate's Amended Petition, on July 25, 2012, the Erie County Common Pleas Court (trial court) sentenced Tate to 9 to 24 months' incarceration for simple assault under Docket No. 874 of 2011, and ordered him to pay court costs and fines totaling $636.15, plus $60.00 to the Crime Victim Compensation Fund (Crime Victim Fund).

---

amended petition naming the Department and the Erie County Clerk of Courts as parties. Due to Tate's failure to timely comply with the order, this Court dismissed Tate's petition for review. Tate filed the Amended Petition on March 11, 2015 and asked this Court to reconsider its dismissal. On March 31, 2015, this Court reinstated Tate's action.

Amended Pet. at ii. On that same day, the trial court sentenced Tate to 12 to 24 months' incarceration for simple assault under Docket No. 226 of 2012 and ordered him to pay costs and fines totaling $943.35, plus $60.00 to the Crime Victim Fund. Amended Pet. at ii.

Although Tate's Amended Petition does not specify exactly when, it appears that in early August 2012,[4] the Department began making monthly deductions from Tate's inmate account to satisfy his court costs and restitution obligations pursuant to Section 9728(b) of the Sentencing Code,[5] 42 Pa.C.S. § 9728(b), commonly known as Act 84. Amended Pet. at ii. Section 9728(b) of the Sentencing Code provides in pertinent part:

> (3) The county clerk of courts shall, upon sentencing, . . . transmit to . . . the [Department] . . . copies of all orders for restitution . . . , reparation, fees, costs, fines and penalties. This paragraph also applies in the case of costs imposed under [S]ection 9721(c.1) [of the Sentencing Code] (relating to sentencing generally).[6]

___

[4] Tate averred that he had 15 days to file his grievance and that he filed it on August 17, 2012. *See* Amended Pet. at ii, 3. Moreover, Tate seeks reimbursement of funds deducted between August 2012 and March 2015. *See* Amended Pet. at 16-17. Exhibit Z (Tate's July 2015 Monthly Account Statement), which Tate filed with this Court without leave on August 20, 2015, does not reflect when the deductions began.

[5] 42 Pa.C.S. §§ 9701-9799.41. The Sentencing Code was amended by Section 4 of the Act of June 18, 1998, P.L. 640.

[6] Section 9721(c.1) of the Sentencing Code states:

> **Mandatory payment of costs.**--Notwithstanding the provisions of [S]ection 9728 [of the Sentencing Code] (relating to collection of restitution, reparation, fees, costs, fines and penalties) or any provision of law to the contrary, in addition to the alternatives set forth in subsection (a), the court shall order the defendant to pay costs. In the event the court fails to issue an order for costs pursuant to [S]ection 9728 [of the Sentencing Code], costs shall be imposed upon the defendant under this section. No court order shall be necessary for the defendant to incur liability for costs under this section. The provisions of this subsection do not alter the court's

3

. . . .

> (5) **The . . . [Department] shall be authorized to make monetary deductions from inmate personal accounts for** the purpose of collecting restitution or any other court-ordered obligation or **costs imposed under [S]ection 9721(c.1) [of the Sentencing Code]**. Any amount deducted shall be transmitted by the [Department] . . . to the probation department of the county or other agent designated by the county . . . in which the offender was convicted. **The [Department] shall develop guidelines relating to its responsibilities under this paragraph**.

42 Pa.C.S. § 9728(b) (emphasis added). Section 3.A of Department DC-ADM 005 (Collection of Inmate Debts Procedures Manual) (Debt Collection Manual) referenced by Tate in his Amended Petition provides, in pertinent part:

> **Collection of Restitution, Reparation, Fees, Costs, Fines and Penalties 42 Pa. C.S. § 9728, Act 84 of 1998 (Act 84)**
>
> 1. When the County Clerk of Courts provides a copy(s) of an order(s) for restitution, reparation, fees, costs, fines, and/or penalties associated with the criminal proceedings, the records office shall file the original and shall forward a copy of the order to the business office of the facility having custody of the inmate. The court order, the **DC-300B, Court Commitment Form**, or supporting information, must indicate the status of the debt including the current balance due and any special conditions, which would [a]ffect payments.
>
> 2. The business office, through inmate account deductions, makes:
>
> a. payments of 20% of the inmate's account balance and monthly income for restitution, reparation, fees, costs, fines, and/or penalties associated with the criminal proceedings pursuant to **42 Pa.C.S. § 9728, Act 84 of 1998**, provided that the inmate has a balance that exceeds $10.00; and

---

discretion under Pa.R.Crim.P. No. [sic] 706(C) (relating to fines or costs).

42 Pa.C.S. § 9721(c.1).

4

b. payments of 10% of all the inmate's account balance and monthly income, for the Crime Victim's Compensation and Victim/Witness Services Funds, provided that the inmate has a balance that exceeds $10.00.

3. The business office shall send the funds deducted to the county probation department or other designated agency.

(Bolded in original); *see* Amended Pet. at 11.

Tate initially sought relief from the deductions and for return of monies from his inmate account through the Department's inmate grievance system.[7] On August 17, 2012, he filed Grievance No. 430224 regarding the allegedly improper Act 84 deductions, and appears to have completed the grievance review process. *See* Amended Pet. at ii-iii, 3-4.

Although not the model of clarity,[8] we can glean from the Amended Petition that Tate alleges that his due process rights were violated because: (1) the trial court did not afford him the opportunity to object to the costs, fines and Crime Victim Fund assessments (*see* Amended Pet. at 1-2, 8-10); (2) the Crime Victim Fund deductions were not statutorily authorized (*see* Amended Pet. at 2); (3) he was deprived of a pre-deduction hearing (*see* Amended Pet. at 3-4, 11-12); and, (4) deductions were made from earned income and gifts (*see* Amended Pet. at 2, 5-6, 13). Tate requests this Court to order the Department to discontinue the deductions and reimburse him those funds that were illegally deducted. *See* Amended Pet. at iii, 17-18. He also seeks $200,000.00 in damages for emotional distress, headaches and resultant outbursts he contends are related to the deductions. *See* Amended Pet. at 6-7, 16.

---

[7] DC-ADM 804 (Inmate Grievance System).

[8] "The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys. If a fair reading of the complaint shows that the complainant has pleaded facts that may entitle him to relief, the preliminary objections will be overruled." *Danysh v. Dep't. of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004) (citation and emphasis omitted), *aff'd,* 881 A.2d 1263 (Pa. 2005).

Tate first appears to claim that his due process rights were violated because the trial court ordered the payment of costs, fines and the Crime Victim Fund assessment *in absentia* and he was not afforded the opportunity to object thereto. We disagree.

It is unclear if Tate is alleging that he was not present during sentencing, or that he was present, but was not advised by the trial court that it was ordering him to pay costs, fines and restitution, so that he could contest the trial court's action at that time. A plaintiff is required to "plead all the facts that must be proved in order to achieve recovery on the alleged cause of action." *Commonwealth v. Peoples Benefit Servs., Inc.*, 895 A.2d 683, 689 n.10 (Pa. Cmwlth. 2006). Tate's averment that he was ordered to pay costs, fines and restitution *in absentia*, without any facts regarding the circumstances thereof, is insufficient to support his alleged claim or that what occurred was improper. Moreover, the law is clear that "[w]hile in custody under sentence, the avenue to challenge the payment of criminal fines is in a direct appeal or in post[-]conviction relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546." *Neely v. Dep't of Corr.*, 838 A.2d 16, 19 (Pa. Cmwlth. 2003). "[An inmate] may not challenge the substance of the court's order by seeking an injunction against [the Department]." *Harding v. Stickman*, 823 A.2d 1110, 1112 (Pa. Cmwlth. 2003).

Accordingly, Tate's Amended Petition fails to state facts sufficient to support his claim that his due process rights were violated. Further, Tate may not challenge the trial court's order by requesting this Court to enjoin the Department from fulfilling its statutory obligations.

6

Tate also argues that deductions for the Crime Victim Fund are not statutorily authorized. We disagree. Section 1101 of the Crime Victims Act[9] expressly provides:

> **(a) Imposition.**
>
> (1) A person who pleads guilty or nolo contendere or who is convicted of a crime **shall**, in addition to costs imposed under 42 Pa.C.S. § 3571(c) (relating to Commonwealth portion of fines, etc.), **pay costs of at least $60** and may be sentenced to pay additional costs in an amount up to the statutory maximum monetary penalty for the offense committed.
>
> . . . .
>
> **(b) Disposition.**
>
> (1) There is established a special nonlapsing fund, known as the **Crime Victim's Compensation Fund**. This fund shall be used by the Office of Victims' Services for payment to claimants and technical assistance. Thirty-five dollars of the costs imposed under subsection (a)(1) and (2) plus 30% of the costs imposed under subsection (a)(1) which exceed $60 **shall be paid into this fund**. All costs imposed under subsection (a)(3) shall be paid into this fund.
>
> . . . .
>
> **(c) Payment.** This cost **shall be imposed notwithstanding any statutory provision to the contrary**.
>
> . . . .
>
> **(e) Court order. No court order shall be necessary** in order for the defendant to incur liability for costs under this section. Costs under this section must be paid in order for the defendant to be eligible for probation, parole or accelerated rehabilitative disposition.

18 P.S. § 11.1101 (text emphasis added). Moreover, the Pennsylvania Superior Court in *Commonwealth v. LeBar*, 860 A.2d 1105 (Pa. Super. 2004), held that the

---

[9] Act of November 24, 1998, P.L. 882, *as amended*, 18 P.S. §§ 11.101-11.5102.

Department was authorized to deduct costs assessed under Section 1101 of the Crime Victims Act from the inmate's account under Act 84. *See also Greer v. Commonwealth* (Pa. Cmwlth. No. 43 M.D. 2008, filed July 25, 2008). Because inmate account deductions for Crime Victim Fund obligations are statutorily mandated, Tate's Amended Petition fails to state facts sufficient to support his claim that they are not authorized.

Tate next contends that the Department's inmate account deductions violated his due process rights because he did not receive a pre-deduction hearing. We disagree. We acknowledge that Section 9730(b) of the Sentencing Code provides that "[b]efore an offender can be confined solely for nonpayment of financial obligations he or she must be given an opportunity to establish inability to pay."[10] *George v. Beard*, 824 A.2d 393, 396 (Pa. Cmwlth.), *aff'd*, 831 A.2d 597 (Pa. 2003); *see* 42 Pa.C.S. § 9730(b). However, Section 9730 of the Sentencing Code applies only when the defendant's sentence prescribes financial obligations without confinement, which is not the case here. *See George*. The Pennsylvania Supreme Court explained:

> [P]ursuant to Section 9730(b) of the Sentencing Code, when a defendant is in default, the court of common pleas conducts a hearing to determine the defendant's ability to pay, and then may order an appropriate payment plan. Section 9730(b) [of the Sentencing Code] directs the court to consider the defendant's financial resources. However, we agree . . . that in granting to the Department the supplementary power to collect court-ordered financial obligations from inmate accounts, the Legislature recognized that the deducted amounts were relatively small and that it was impractical and burdensome for trial courts to conduct an ability to pay hearing anytime the funds in an inmate's account fluctuated. . . . Section 9728(b)(5) [of the

---

[10] The Post Conviction Relief Act applies to offenders sentenced to imprisonment or special supervision, and not a sentence imposing only financial obligations. *See George v. Beard*, 824 A.2d 393 (Pa. Cmwlth.), *aff'd*, 831 A.2d 597 (Pa. 2003).

8

Sentencing Code, Act 84] provides an additional procedure for deducting restitution, fines, and costs directly from inmate accounts pursuant to a legally[-]imposed sentence.

*Buck v. Beard*, 879 A.2d 157, 161 (Pa. 2005).

[Section 9728](b)(5) [of the Sentencing Code, Act 84] authorizes [the Department] to make monetary deductions from an inmate's account to pay court ordered fines and costs and does not impose prior court authorization as a threshold condition. As noted, [Tate] concedes that fines and costs were imposed as part of his criminal sentence. [Amended Pet. at ii]. It is the judgment of sentence which enables [the Department] to deduct the funds. Thus, [Tate] may not challenge that judgment by seeking to enjoin [the Department] from carrying out its statutorily[-]mandated duty to deduct the funds.

Nor is [Tate] entitled to reimbursement from [the Department] for funds deducted from his account. Pursuant to Section 9728(b)(5) of the Sentencing Code, [Act 84,] the funds deducted from his inmate account were sent to the appropriate county agent for payment of his court ordered obligations. As such, he has no right to reimbursement from [the Department].

*George*, 824 A.2d at 396-97 (citations omitted).

Tate bases his due process violation claim on *Montanez v. Secretary Pennsylvania Department of Corrections*, 773 F.3d 472 (3rd Cir. 2014), and *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Amended Pet. at 8, 10-11, 14-15. The *Montanez* Court held:

Procedural due process claims are governed by the standard first enunciated in [*Mathews*]. Under that standard, a court is to weigh three factors: (1) 'the private interest that will be affected by the official action', (2) 'the risk of an erroneous deprivation of such interest through the procedures used' and the value of 'additional or substitute procedural safeguards', and (3) the governmental interest, 'including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.' *Id.*

9

> State prisoners plainly have a property interest in the funds in their inmate accounts. *See, e.g., Reynolds* [*v. Wagner*]*,* 128 F.3d [166,] 179 [(3rd Cir. 1997)]. As other courts have held, however, this interest is reduced because inmates 'are not entitled to complete control over their money while in prison.' *See Mahers v. Halford,* 76 F.3d 951, 954 (8th Cir.1996). Further, the government has an 'important state interest' in collecting restitution, costs, and fines from incarcerated criminal offenders to compensate victims. *See id.* at 956.

*Id.* at 483. However, the *Montanez* Court acknowledged that "considering the factors required by *Mathews,* the government's interest in collecting restitution, fines, and other costs from convicted criminals does not overcome the default requirement that inmates be provided with process before being deprived of funds in their inmate accounts[,]" and that sentencing hearings and post-deprivation grievance procedures alone may be insufficient to comply with the standard established in *Mathews*. *Montanez,* 773 F.3d at 485.

> The *Montanez* Court expounded:

> In *Buck,* the Pennsylvania Supreme Court held that the Pennsylvania and federal Constitutions did not require the [Department] to obtain a judicial determination of ability to pay prior to deducting funds from an inmate account. *Id.* at 159–60. As the prior Third Circuit panel in this very case noted, the 'Court's reasoning in *Buck* informs our analysis,' but 'it is not dispositive.' *Montanez* [*v. Beard*, 344 Fed.Appx. 833,] 835 [(3d Cir. 2009)].

*Id.*

> The Court continued:

> At a minimum, federal due process requires inmates to be informed of the terms of the [Department] Policy and the amount of their total monetary liability to the Commonwealth. *See Higgins* [*v. Beyer*]*,* 293 F.3d [683,] 694 [(3d Cir. 2002)]. **In particular, the [Department] must disclose to each inmate before the first deduction: the total amount the [Department] understands the inmate to owe pursuant to the inmate's sentence; the**

10

**rate at which funds will be deducted from the inmate's account; and which funds are subject to deduction**. Further, **inmates must have a meaningful opportunity to object to the application of the [Department] Policy to their inmate accounts before the first deductions commence**. This opportunity to object is required to protect against the possibility of error in the application of the [Department] Policy, such as mistakes in reporting of an inmate's total liability or to ensure that deductions are not made from funds that are exempt. *See Id.* at 693 (Veterans Administration disability benefits are not subject to deduction to satisfy criminal fines).

To be clear, **we do not suggest that the [Department] must provide each inmate with a formal, judicial-like hearing before the onset of deductions**. Moreover, we find nothing substantively unreasonable about the [Department's] refusal to provide exceptions to its across-the-board 20% rate of deduction, in light of the fact that the [Department] will not make deductions when an inmate's account falls below a certain minimum. Because we find the deduction rate to be reasonable, the [Department] need not entertain a challenge to the rate of deduction, though it must provide an opportunity for inmates to object to potential errors in the deduction process.

We also do not mean to suggest that inmates must have an opportunity to be heard prior to each deduction. Rather, after providing the required initial notice the [Department] could provide inmates with an informal opportunity to supply written objections to prison administrators prior to the first deduction. *See, e.g.,* Iowa Code § 904.702(1); Ohio Admin. Code 5120–5–03(C). We need not set forth specific procedures, and the [Department] retains discretion, consistent with its constitutional obligations, to implement such procedures in a flexible and cost-effective manner.

*Montanez*, 773 F.3d at 486 (emphasis added).

Even if we view *Montanez* as instructive,[11] it does not support Tate's claim that the Department's inmate account deductions violated his due process rights

___

[11] The Pennsylvania Supreme Court has held: "While we certainly find [Third Circuit Appeals Court] decisions instructive, their holdings . . . are not binding on us or any other court of this Commonwealth." *Goldman v. Se. Pa. Transp. Auth.*, 57 A.3d 1154, 1169 n.12 (Pa. 2012).

11

because he did not receive a pre-deduction hearing. The decision has little value when determining whether Tate's Amended Petition alone sets forth a due process violation against the Department to withstand preliminary objections because the Amended Petition, on its face, reflects that Tate was aware of what he owed in costs, fines and restitution, and that he sought review under the Department's grievance procedures. Moreover, the Amended Petition does not state that he was deprived of pre-deduction notice by way of the inmate handbook or written notice, but rather that he was not afforded a pre-deprivation hearing which, even the *Montanez* Court acknowledged, was not required. Accordingly, the Amended Petition fails to state facts sufficient to support a claim that the Department's failure to afford Tate a pre-deduction hearing violated his due process rights.

Tate further asserts that the Department improperly made deductions from his earned income and gifts. We disagree. Section 9728(b)(5) of the Sentencing Code, Act 84, expressly authorizes the Department, subject to its developed guidelines, "to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation . . . ." 42 Pa.C.S. § 9728(b)(5). This Court held that

> [t]he Legislature has not provided an exception for gifts placed in an inmate's personal account, and it does not require the Department to account for the source of all funds in an inmate's personal account before making deductions. The personal account of an inmate **may be derived from various sources, including wages, gifts and government benefits. The source of funds is of no moment**.

*Danysh v. Dep't of Corr.*, 845 A.2d 260, 263 (Pa. Cmwlth. 2004) (emphasis added), *aff'd*, 881 A.2d 1263 (Pa. 2005). Moreover, although wages in an employer's hands are exempt from garnishment under Section 8127 of the Judicial Code, 42 Pa.C.S. § 8127, there is a specific exception "[f]or restitution to crime victims, costs, [or] fines .

12

. . pursuant to an order entered by a court in a criminal proceeding." 42 Pa.C.S. § 8127(a)(5). Further, this Court has recognized that

> [i]t has long been settled that an inmate at a correctional facility is not an employee of the correctional facility because there is no employer/employee relationship as an inmate's labor belongs to the prison, and the remuneration paid to the inmate is a gratuitous payment authorized by the state as a rehabilitative tool rather than wages.

*Heffran v. Dep't of Labor & Indus.*, 863 A.2d 1260, 1263 (Pa. Cmwlth. 2004) *aff'd*, 886 A.2d 222 (Pa. 2005) (holding that an inmate was not an employee with standing to file a complaint for violations of the Worker and Community Right-to-Know Act[12]); *see also Mays v. Fulcomer*, 552 A.2d 750 (Pa. Cmwlth. 1989) (holding that inmate remuneration for prison labor does not constitute wages under Section 8127 of the Judicial Code). Thus, because "Act 84 allows the Department to make deductions from all money in an inmate's account, regardless of whether the source was the inmate's earned income or gifts from friends or family[,]" Tate's Amended Petition fails to state facts sufficient to support a claim that the Department improperly made deductions from his earned income and gifts. *Rosario v. Beard*, 920 A.2d 931, 935 n.7 (Pa. Cmwlth. 2007).

Tate finally argues that he is entitled to damages for mental anguish and mental distress stemming from the deductions. We disagree. In the Amended Petition, Tate specifically avers that his reduced inmate account funds left him with "no money to buy[] basic cosmetic[s] for personal hygiene for personal usage," which caused emotional distress. Amended Pet. at 16. He contends that the emotional distress caused headaches and increased blood pressure, and that he "[h]ad numerous irrational outbursts, . . . lashing out towards commissary workers,

---

[12] Act of October 5, 1984, P.L. 734, 35 P.S. §§ 7301-7320.

13

counselors, unit managers and [Department] staff." Amended Pet. at 7: *see also* Amended Pet. at 16, 18.

It is unclear whether Tate is alleging negligence or Department employees intentionally and unlawfully took his money. The law is well settled that under Section 8521 of the Judicial Code, commonly known as the Sovereign Immunity Act,[13] 42 Pa.C.S. § 8521, "sovereign immunity protects Commonwealth officials and employees acting within the scope of their duties from civil liability. 1 Pa.C.S. § 2310." *Kull v. Guisse*, 81 A.3d 148, 154 (Pa. Cmwlth. 2013).

> [S]overeign immunity may be overcome where the party can establish: (1) a common law or statutory cause of action under which damages could be recoverable if not for the immunity defense, and (2) the alleged negligent act falls within one of the nine specific exceptions provided in 42 Pa.C.S. § 8522(b).[14]
>
> However, state employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment.

*Id.* at 157 (citation omitted; emphasis added). Arguably, only the exception pertaining to the care, custody or control of personal property applies to Tate's claim. This Court has held that the Commonwealth may be liable to an inmate for **damage to or negligent handling of** personal property under its care, custody or control, *Williams v. Stickman*, 917 A.2d 915 (Pa. Cmwlth. 2007). However, this Court has also held that the **taking of** the property is not conduct that falls within that exception. *See Goodley v. Folino* (Pa. Cmwlth. No. 2376 C.D. 2010, filed July 1,

---

[13] 42 Pa.C.S. §§ 8521-8528.

[14] In Section 8522(b) of the Sovereign Immunity Act, a Commonwealth party may be liable for damages due to: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522(b). None of these exceptions expressly apply in this case.

2011). Thus, Tate may not recover in negligence for the alleged taking of money from his inmate account. Moreover, because the Department employees' deductions from Tate's inmate account and transfer to the clerk of courts were statutorily mandated, sovereign immunity bars a claim for intentional conduct.

Based upon the foregoing, the Department's preliminary objections are sustained and Tate's Amended Petition is dismissed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| Department of Corrections | : | |
| Secretary of Corrections | : | |
| John E. Wetzel | : | |
| SCI Pittsburgh Accounting Manager | : | |
| SCI Camp Hill Accounting Manager | : | |
| SCI Chester Accounting Manager | : | |
| SCI Benner Accounting Manager | : | |
| Erie County Court of Common Pleas | : | |
| Judge John Garhart | : | |
| Erie County Common Pleas | : | |
| Clerk of Record John Catalde, | : | |
|                      Respondents | : | |
| | : | |
|         v. | : | |
| | : | |
| Amos Tate, | : | No. 614 M.D. 2014 |
|                Petitioner | : | |

## O R D E R

AND NOW, this 8th day of February, 2016, the Pennsylvania Department of Corrections' preliminary objections are sustained, and Amos Tate's Amended Petition for Review is dismissed.

_____
ANNE E. COVEY, Judge