# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Geoffrey Elkington, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 478 M.D. 2018 |
| | : | Submitted: April 16, 2021 |
| Department of Corrections, | : | |
| Respondent | : | |

**BEFORE:** **HONORABLE P. KEVIN BROBSON,** President Judge[1]
**HONORABLE RENÉE COHN JUBELIRER,** Judge
**HONORABLE CHRISTINE FIZZANO CANNON,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: May 27, 2021**

Presently before the Court are the Motion for Summary Judgment filed by Geoffrey Elkington (Elkington) and the Motion for Judgment on the Pleadings filed by the Pennsylvania Department of Corrections (Department), both of which we treat as Applications for Summary Relief under Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1532(b).[2] Elkington filed a pro se Petition for Review (Petition) in this Court's original jurisdiction challenging the Department's deductions of alleged court costs from Elkington's inmate account on

---

[1] This case was initially assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge, but was held in abeyance and then resubmitted after the Court of Common Pleas of Chester County issued an order that addressed an issue related to this matter.

[2] The Department filed its Motion for Judgment on the Pleadings "pursuant to Pennsylvania Civil Rule of Procedure 1034," Pa.R.C.P. No. 1034.

the basis that there is no court order or sentencing hearing transcript reflecting that the Court of Common Pleas of Chester County (trial court) imposed court costs upon Elkington. The Department filed an Answer and New Matter and, later, an Answer and Amended New Matter to the Petition to which it appended a transcript from the sentencing hearing purporting to include such costs. Elkington's Motion for Summary Judgment is based on the original New Matter, which Elkington argues asserts claims that were already rejected as insufficient by the Court, and the Department's Motion for Judgment on the Pleadings is based on the Amended New Matter, particularly the sentencing hearing transcript and its claim that it is entitled to sovereign immunity. For the reasons that follow, we deny Elkington's Motion for Summary Judgment, grant the Department's Motion for Judgment on the Pleadings, and dismiss Elkington's Petition.

## I. BACKGROUND

### A. *Factual Allegations*

In July 2018, Elkington filed the Petition, the allegations of which we described in *Elkington v. Department of Corrections* (Pa. Cmwlth., No. 478 M.D. 2018, filed June 3, 2019) (*Elkington I*), as follows.

> The . . . trial court . . . sentenced Elkington on December 16, 2010, to 25[] to 50[] years' imprisonment. (Petition ¶¶ 1-2.) On January 23, 2018, the Department notified Elkington that it would begin to take a [20%] percent deduction from his inmate account for court costs totaling $2,974.35, and it started those deductions on June 7, 2018.[] (*Id.* ¶¶ 4, 7.) The Department justified the deductions for court costs by referencing the DC-300B Commitment Form and Sentencing Sheets in the Department's possession. (*Id.* ¶ 5.) Elkington filed a grievance contesting these deductions and exhausted his administrative remedies. (*Id.* ¶ 6.) Elkington alleges that the trial court expressly stated at the time of his sentencing that it would not order the payment of costs or fines, and no official sentencing order exists to support the

2

Department's contention otherwise.  (*Id.* ¶ 8.)  Elkington alleges that a request under the Right-to-Know Law[, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104,][] revealed that no sentencing order exists, and his requests to the trial court for a transcript of the sentencing hearing revealed that no transcript exists either.  (*Id.* ¶ 12.)  Elkington asserts that the Sentencing Sheets and DC-300B Commitment Form are not sentencing orders.  Even if they were, the Department . . . does not have the authority to collect costs that are not specifically ordered by the trial court, as set forth in Section 9728(b)(5) of the Sentencing Code, 42 Pa. C.S. § 9728(b)(5), commonly referred to as Act 84.  (Petition ¶¶ 9-10.)  Section 9728(b)(5) provides generally that the Department "shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation."  42 Pa. C.S. § 9728(b)(5).  Elkington requests an interlocutory order requiring the Department to stop making deductions until a valid sentencing order or transcript from the sentencing hearing is produced showing that he was ordered to pay costs. (Petition ¶ 13.)  Further, Elkington seeks the return of the funds that he contends were improperly deducted from his account for these court costs, as well as full restitution of costs incurred in filing the grievances and this action, and punitive damages.  (*Id.* ¶ 14.)

*Elkington I*, slip op. at 2-3.  Thus, Elkington seeks injunctive relief to stop the Department from taking any additional funds and for the Department to reimburse that which has been taken from his inmate account.  (Petition ¶¶ 13-14.)

### B. The Department's Preliminary Objections

The Department filed preliminary objections in the nature of a demurrer, arguing that it was entitled to take the deductions under Sections 9721(c.1) and 9728(b)(5) of the Sentencing Code, 42 Pa.C.S. §§ 9721(c.1), 9728(b)(5).[3]  For

---

[3] Prior to December 18, 2019, Section 9728(b)(5) provided in relevant part that "the Department . . . shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation or costs imposed under [S]ection 9721(c.1)."  *Former* 42 Pa.C.S. § 9728(b)(5).  Section 9728(b) was amended by Section 4 of the Act of December 18, 2019, P.L. 776, effective immediately, and Section 9728(b)(5)(i) now states, in pertinent part, that "the Department . . . shall make monetary **(Footnote continued on next page…)**

support, the Department attached Sentencing Sheets, which had pre-printed boxes around the word "costs" and a handwritten notation of the amount of the costs, and the DC-300B Commitment Form. We overruled those preliminary objections in *Elkington I*.

We held that the Department could not rely on Section 9721(c.1) because it became effective after Elkington's sentencing. *Elkington I*, slip op. at 6. Thus, the Department had to establish that the costs were "court-ordered" pursuant to Section 9728(b)(5). However, because we could not "definitively say at this early stage that the costs were court-ordered[,]" we overruled the preliminary objections based on that provision. *Elkington I*, slip op. at 8. The DC-300B Form could not be relied upon pursuant to *Spotz v. Commonwealth*, 972 A.2d 125, 130-31 (Pa. Cmwlth. 2009), where, as here, the imposition of costs was disputed. *Elkington I*, slip op. at 8, 10. The Sentencing Sheets could not be relied upon for the purposes of granting a demurrer because, although there was a pre-printed box around the word "costs," there were no other markings reflecting the affirmative imposition of costs by the trial court, and, therefore, those documents could not establish "conclusive evidence

---

deductions . . . from inmate wages and personal accounts for the purpose of collecting restitution, costs imposed under [S]ection 9721(c.1), . . . , or any other court-ordered obligation . . . ." 42 Pa.C.S. § 9728(b)(5)(i). Under either version of Section 9728(b), the Department is authorized to make deductions from an inmate's account to pay for court-ordered costs. The portion of Section 9728(b)(5) referencing costs imposed under Section 9721(c.1) was added by Section 3 of the Act of October 27, 2010, P.L. 949, No. 96 (Act 96), at the time that Section 9721(c.1) was added to the Sentencing Code by Section 2 of Act 96. Section 9721(c.1) provides that

> [n]otwithstanding the provisions of Section 9728 . . . the [sentencing] court shall order the defendant to pay costs. In the event the [sentencing] court fails to issue an order for costs pursuant to section 9728, costs shall be imposed upon the defendant under this section. No court order shall be necessary for the defendant to incur liability for costs under this section.

42 Pa.C.S. § 9721(c.1).

4

that costs were court-ordered" pursuant to *Saxberg v. Commonwealth*, 42 A.3d 1210, 1214-15 (Pa. Cmwlth. 2012). *Elkington I*, slip op. at 9-10. Having overruled the Department's preliminary objections, we ordered it to file an Answer to the Petition.

### *C. The Department's Answers and Elkington's Responses*

The Department filed the Answer and New Matter (Original Answer and New Matter), in which it admitted certain allegations regarding the deductions from Elkington's inmate account but denied that the trial court did not impose court costs and other allegations as being conclusions of law or opinions to which no response was required. As New Matter, the Department asserted it was immune from Elkington's claims, which the Department characterized as being intentional torts, under the doctrine of sovereign immunity and averred facts in support of that defense.

Elkington filed an Answer to the Original New Matter, responding that the Department presented no evidence, nor can it, to support its averment that the trial court imposed court costs and that the trial court expressly did not impose those costs. As for sovereign immunity, Elkington argued that the cases the Department relied upon are distinguishable because there was no challenge to whether the costs were ever imposed in those cases. Even if sovereign immunity could apply, Elkington asserted that the exception for care and custody of property in the possession of the Department, Section 8522(b)(3) of the act commonly known as the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(3), would apply in this situation. Elkington then filed, on or about January 17, 2020, the Motion for Summary Judgment based on the Answer and New Matter. Therein, Elkington asserts that the Department simply "reiterated [its] initial objections and stated that [it was] entitled to deduct monies from [Elkington's] income without any authorization because [the

5

Department] w[as] subject to 'sovereign immunity.'" (Motion for Summary Judgment at 1.) However, he maintains, without authorization from the trial court – as is missing here – the Department cannot, as a matter of law, take deductions from his account.

Following the filing of the Motion for Summary Judgment, the Department requested, and was granted, permission to file an Answer and Amended New Matter. While the Department's Answer to the Petition was the same as before, in its Amended New Matter, the Department avers that when Elkington was sentenced on December 16, 2010, the trial court stated that while fines would not be imposed, Elkington was to "pay costs of prosecution." (Amended New Matter ¶¶ 18-19.) Attached to the filing as Exhibit A is a copy of the transcript from Elkington's December 16, 2010 sentencing hearing. (Amended New Matter Ex. A.) The Department further attached, as Exhibit B, what it characterized as the sentencing orders that contain the words "Costs," "Fine," and "Restitution," and of the three, only "Costs" had a box placed around it. (Amended New Matter ¶¶ 21-22; Ex. B.) Attached as Exhibit C is the DC-300B Form calculated by the County Clerk of Courts and transmitted to the Department, which reflects costs of $2,974.35 and $60 for the Crime Victims Compensation (CVC) Fund fee, for a total of $3,034.35. (*Id.* ¶ 23; Ex. C.) Based on the transcript and related forms, the Department asserted that because "the court specifically awarded the costs of prosecution, [which] the paperwork supports . . . , those costs were properly deducted by [the Department]." (*Id.* ¶ 24.) The Department further reiterates its position that Elkington is essentially asserting an intentional tort from which it is entirely immune under the doctrine of sovereign immunity. (*Id.* ¶¶ 25-28 (citing *Commonwealth v. Tate*, 133 A.3d 350,

6

359-60 (Pa. Cmwlth. 2016)).) It contended none of the exceptions to immunity under Section 8522 of the Judicial Code apply to this situation. (*Id.* ¶ 29.)

Elkington filed an Answer to the Amended New Matter, challenging the transcript from the sentencing hearing. (Answer to Amended New Matter at 3.) According to Elkington, he had been attempting to obtain the transcript for years with no success, and suddenly the Department is offering it in this matter. Elkington points out that the transcript is not signed by the court reporter or sentencing judge and lacks any seal or certification confirming its authenticity. As such, Elkington contends that the "transcript has no value as a legally valid document" and should not be considered. (*Id.* at 2-3.) Further, he asserts that if the transcript was valid, he should have had the opportunity to contest its accuracy because it includes language that Elkington asserts is wrong. Specifically, Elkington maintains that the transcript is wrong where it reflects that the trial court judge ordered him to pay costs of prosecution because that judge was "cogni[zant] of the restriction on one's ability to have income in the State Correctional Institut[ion]," and, therefore, Elkington contends that the judge did not impose any costs or fines (*Id.* at 3.) He also avers that other statements by the trial court judge were omitted. Elkington further challenges the Department's reliance on the Sentencing Sheets as constituting sentencing orders, as the Court has already rejected those claims, and contends that the box around the word "Costs" was added after the trial court judge and court clerk had signed the Sentencing Sheets. Because costs may only be collected under Section 9728(b)(5) if ordered by the court in a sentencing order, and Elkington contends that did not happen here, neither the court clerk nor the Department has the authority to, respectively, assess and collect those costs here.

7

*D. The Department's Motion for Judgment on the Pleadings*

After Elkington filed his Amended Answer to the Amended New Matter, the Department filed its Motion for Judgment on the Pleadings. Therein, the Department argues that it is entitled to judgment on the pleadings because the trial court clearly ordered Elkington to pay the costs of prosecution during the sentencing hearing. This order was then documented in the Sentencing Sheets by placing a box around the word "Costs" only. Thus, the Department argues the transcript and other documentation support that the Department's deductions are court-ordered and, as such, proper under the law. Although Elkington argues that the hearing transcript is invalid, the Department asserts that he provides no support for his claim and his allegations of fraud are unfounded. In addition, the Department argues it is entitled to judgment on the pleadings because Elkington's claims are barred by sovereign immunity and there are no exceptions to that doctrine that are applicable here. The Department contends that Elkington has conceded the applicability of this doctrine because he did not directly address that allegation in his Amended Answer to the Department's Amended New Matter.

Elkington filed a letter in response to the Motion for Judgment on the Pleadings indicating that he is relying on his prior filings and allegations. He maintains that the Department is "merely rehash[ing] already discredited arguments and adds nothing new." (Elkington's Letter in Response to Motion for Judgment on the Pleadings at 1.)

*E. The Stay of this Matter*

After the Department filed the Motion for Judgment on the Pleadings, Elkington filed a Motion to Correct Errors of Sentencing Hearing (Motion to Correct Errors) with the trial court on or about August 25, 2020. (Chester County Criminal

Docket CP-15-CR-0001376-2009 (Crim. Docket) at 85.[4]) Because Elkington was challenging the accuracy of the sentencing hearing transcript in both this matter, as well as before the trial court, on December 30, 2020, this Court issued a rule "upon the parties as to why this matter should not be stayed pending the trial court's disposition of the Motion to Correct Errors" and for the parties to file statements in response. (Dec. 30, 2020 Order.) The Department had no objection to staying the case. Elkington objected, arguing that his claim was not dependent on the sentencing hearing transcript because the only operative document for sentencing purposes was a written sentencing order. As no such order had been produced in this matter, Elkington argued, it did not matter what was said during the sentencing hearing. By order dated February 4, 2021, we disagreed with Elkington that the sentencing hearing transcript was irrelevant, as the Petition itself referred to the transcript and Pennsylvania courts have considered the contents of sentencing transcripts in similar matters in the absence of a written sentencing order. (Feb. 4, 2021 Order (citing *Com. ex rel. Connelly v. Gilmore* (Pa. Cmwlth., No. 1919 C.D. 2016, filed Aug. 25, 2017); *Joseph v. Glunt*, 96 A.3d 365 (Pa. Super. 2014); *Com. v. Mazer*, 24 A.3d 481, 482 (Pa. Cmwlth. 2011)).) Accordingly, we stayed this matter and directed

---

[4] Although not introduced by the parties, the underlying criminal proceedings are directly related to the claims made here and are referenced throughout the pleadings, and this Court may take judicial notice of the dockets of other courts of the Commonwealth. *See, e.g.*, Pennsylvania Rule of Evidence 201(b)(2) (permitting courts to take judicial notice of facts that may be "determined from sources whose accuracy cannot reasonably be questioned"); *Moss v. Pa. Bd. of Prob. & Parole*, 194 A.3d 1130, n.11 (Pa. Cmwlth. 2018) (taking judicial notice of docket entries that were not contained in the original record); *Miller v. Unemployment Comp. Bd. of Rev.*, 131 A.3d 110, 115 (Pa. Cmwlth. 2015) (taking judicial notice of a claimant's criminal docket and records contained therein); *Germantown Cab. Co. v. Phila. Parking Auth.*, 27 A.3d 280, 283 n.8 (Pa. Cmwlth. 2011) (taking judicial notice of a Supreme Court docket in a case involving a similar point of law); *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 899 (Pa. Super. 2006) (stating that a court may take judicial notice of a fact "which is incorporated into the complaint by reference to a prior court action").

Elkington to file a status report by April 5, 2021, and, if the matter had been resolved by then, a copy of the trial court's order.

Thereafter, Elkington filed a statement in response to the February 4, 2021 order, indicating that the trial court had denied the Motion to Correct on January 26, 2021. Notwithstanding the denial, Elkington pointed to what he termed obvious mistakes in the transcript and reiterated his arguments regarding why the transcript could not be relied upon as accurate, including that it was not signed by the court reporter or certified. Elkington did not attach a copy of the trial court's order to his response. By order dated March 4, 2021, we directed Elkington to file and serve a copy of the trial court's January 26, 2021 order and, if possible, the Department to file and serve a certified copy of the sentencing hearing transcript in 30 days.

On March 31, 2021, Elkington filed a copy of the January 26, 2021 order, which denied the Motion to Correct. Therein, the trial court explained that "neither the prosecutor, County Detectives, nor the Judge involved with the underlying sentence are currently employed in Chester County and are therefore unable to review [Elkington's] suggested changes." (Trial Ct. Jan. 26, 2021 Order n.1.) The trial court further explained that, "upon review of [Elkington's] Motion, none of the requested changes are substantive in nature which would affect the outcome of this matter." (*Id.*) Thus, the trial "court [was] unable to grant the relief requested." (*Id.*) The Department filed a copy of the December 16, 2010 sentencing hearing transcript that was signed by the court reporter and the trial court's President Judge,[5] and certified from the record by the trial court's deputy clerk as of April 1, 2021.[6]

---

[5] The date of the President Judge's signature on the transcript, February 20, 2020, is prior to this Court's March 4, 2021 order.

[6] Although the transcript was filed on April 12, 2021, which was after the period directed in our March 4, 2021 order, the trial court did not file the transcript until near the end of that period. **(Footnote continued on next page…)**

10

Having set forth the pleadings and other filings submitted to the Court, we now turn to resolving Elkington's Motion for Summary Judgment and the Department's Motion for Judgment on the Pleadings.

## II. Motion for Summary Judgment

Appellate Rule 1532(b) provides that, "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear," and encompasses motions for summary judgment. Pa.R.A.P. 1532(b), Note. "An application for summary relief is properly evaluated according to the standards for summary judgment." *McGarry v. Pa. Bd. of Prob. & Parole*, 819 A.2d 1211, 1214 n.7 (Pa. Cmwlth. 2003). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Royal v. Se. Pa. Transp. Auth.*, 10 A.3d 927, 929 n.2 (Pa. Cmwlth. 2010). *See also* Pennsylvania Rule of Civil Procedure 1035.2, Pa.R.C.P. No. 1035.2 (setting forth the standard for summary judgment). In considering whether to grant summary judgment, we review the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Royal*, 10 A.3d at 929 n.2.

Here, Elkington filed his Motion for Summary Judgment based on the Department's **Original** Answer and New Matter. Therein, Elkington argues that the Department simply "reiterated [its] initial objections and stated that [it was] entitled to deduct monies from [Elkington's] income without any authorization because [the Department] w[as] subject to 'sovereign immunity.'" (Motion for Summary

Therefore, we will accept it pursuant to Pennsylvania Rule of Appellate Procedure 105(b), Pa.R.A.P. 105(b), which allows a court to extend deadlines for good cause.

11

Judgment at 1.) There being no authorization for the deduction of court costs, Elkington requests the Court grant summary judgment in his favor. However, the Original Answer and New Matter are no longer the operative pleading to the Petition; the Answer and Amended New Matter control our review. Because the Motion for Summary Judgment does not speak to the facts alleged in the Amended New Matter, it cannot be said to support judgment as a matter of law in Elkington's favor. Accordingly, the Motion for Summary Judgment is denied.

### III. Motion for Judgment on the Pleadings

Appellate Rule 1532(b) also encompasses motions for judgment on the pleadings, Pa.R.A.P. 1532(b), Note. A motion for judgment on the pleadings under Rule 1532(b) is considered under the general standards for such motions. *POM v. Dep't of Revenue*, 221 A.3d 717, 722 n.7 (Pa. Cmwlth. 2019). "A motion for judgment on the pleadings is in the nature of a demurrer"; thus, "all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him." *Trib Total Media, Inc. v. Highlands Sch. Dist.*, 3 A.3d 695, 698 n.2 (Pa. Cmwlth. 2010). In reviewing a motion for judgment on the pleadings, we "may only consider the pleadings themselves and any documents properly attached thereto." *Id.* The motion should only be granted "when the pleadings show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* The burden of establishing the lack of a genuine issue of material fact is on the moving party. *Hughes v. Council 13, Am. Fed. of State, Cnty. & Mun. Emps., AFL-CIO*, 629 A.2d 194, 195 (Pa. Cmwlth. 2003). As these motions are in the nature of a demurrer, we will "not accept as true conclusions of law, unwarranted inferences from fact, argumentative allegations, or expressions of opinion." *Diess v. Pa. Dep't of Transp.*,

12

935 A.2d 895, 903 (Pa. Cmwlth. 2007) (quoting *McGriff v. Pa. Bd. of Prob. & Parole*, 809 A.2d 455, 458 (Pa. Cmwlth. 2002)).

The Department argues it is entitled to judgment on the pleadings because, as the sentencing hearing transcript shows, the trial court clearly ordered Elkington to pay the costs of prosecution. Because the costs were court-ordered, the Department argues it had the authority to deduct them from Elkington's inmate account pursuant to Section 9728(b)(5). It maintains that Elkington's challenges to the accuracy of the sentencing hearing transcript are unfounded and without support. In addition, the Department argues judgment on the pleadings in its favor is proper because Elkington's claims are barred by sovereign immunity pursuant to *Tate*, 133 A.3d at 359-60, and there are no exceptions to that doctrine that are applicable here.

Elkington challenges both the accuracy of the sentencing hearing transcript and the relevance of that transcript in determining whether the Department had the authority to withdraw funds from his inmate account to pay court-ordered costs. While acknowledging that the trial court denied his Motion to Correct Errors, Elkington maintains there are clear inaccuracies in the transcript that, along with the lack of signatures and certification, render that transcript unreliable. Elkington further asserts that the transcript is of no importance because it is the sentencing order, or the lack of one here, that controls pursuant to *Commonwealth v. Isabell*, 467 A.2d 1287, 1292 (Pa. 1983), *Joseph*, 96 A.3d 365, and *Commonwealth v. Quinlan*, 639 A.2d 1235, 1240 (Pa. Super. 1993). In response to this Court's February 4, 2021 order referencing cases in which courts considered the transcripts of sentencing hearings as sufficient, Elkington points out that there were no challenges to the accuracy of those transcripts. (Elkington Status Report filed Mar. 31, 2021, at 9-10.) As for sovereign immunity, Elkington argues, based on his prior

13

responses, that the cases the Department relies upon are distinguishable as, in those cases, there was no challenge to whether the costs were ever imposed. Even if sovereign immunity could apply, Elkington asserts that the exception for care and custody of property in the possession of the Department would apply here.

In *Elkington I*, the Court held that the Department's authority to take the deductions from Elkington's inmate account would have to arise from Section 9728(b)(5). *Elkington I*, slip op. at 7. Pursuant to Section 9728(b)(5), the Department is authorized to deduct money from an inmate's account for the purpose of collecting any court-ordered obligation or costs. *Former* 42 Pa.C.S. § 9728(b)(5); *see also* 42 Pa.C.S. § 9728(b)(5)(i). Reviewing the pleadings and the materials attached thereto, we agree with the Department that there is no genuine issue of material fact as to whether the trial court ordered Elkington to pay costs during the December 16, 2010 sentencing hearing.

The December 16, 2010 sentencing hearing transcript, a signed and certified copy of which is now before the Court, indicates that the trial court ordered Elkington to pay costs. (Dec. 16, 2010 Hearing Transcript at 39-40.) After setting forth Elkington's periods of incarceration, the trial court stated: "The defendant will pay the costs of prosecution. We do not impose any fine because we are cogn[izant] of the restrictions on one's ability to have income in the state correctional institution, and there is simply no way we are going to see any fines in this matter." (*Id.*) Consistent with the trial court's oral sentencing order, the Sentence Summaries, signed by the trial court, reflect the periods of incarceration related to each count and that no fines would be imposed but that costs would be imposed by indicating "Fine -- & Costs," with a box around the word "Costs." (Answer with Amended New Matter, Ex. B.) The handwritten notation on the first page of the Sentence

Summaries, dated January 4, 2011, reflects "Fine – 0" and "Costs- [$]3034.35." (*Id.*) The notation is consistent with page 23 of the DC-300B Form and page 86 of Elkington's Criminal Docket, which show "Costs" in the amount of $2,974.35 and a CVC fee of $60, which combined equals $3,034.35. (*Id.*, Ex. C at 23; Crim. Docket at 86.)

We acknowledge that Elkington challenges the accuracy of the sentencing hearing transcript, referencing his recollection of what the trial court said during the hearing, certain mistakes within the transcript, such as the wrong case number and the misspelling of his name, and the lack of signatures and certification.[7] Although we are to view the record in the light most favorable to the non-moving party in ruling on a motion for judgment on the pleadings, we are mindful that we are not required to "accept as true . . . unwarranted inferences from fact, argumentative allegations, or expressions of opinion." *Diess*, 935 A.2d at 903. Further, there must be a **genuine** issue of **material** fact in order to preclude judgment at this stage of the proceedings. "Genuine" is defined as "authentic," "real," or "free from pretense,"[8] and a material fact is one that "directly affects the disposition of the case," *Pyeritz v. Commonwealth*, 956 A.2d 1075, 1079 (Pa. Cmwlth. 2008).

We now have a **certified** copy of the transcript signed by the court reporter and the President Judge.[9] The inaccuracies cited by Elkington, such as the wrong

---

[7] We observe that such challenges are to be directed to the trial court. Pennsylvania Rule of Appellate Procedure 1922(c), Pa.R.A.P. 1922(c); *Commonwealth v. Szakal*, 50 A.3d 210 (Pa. Super. 2012).

[8] *See Genuine*, https://www.dictionary.com/browse/genuine# (last visited May 19, 2021).

[9] In a status report filed on April 14, 2021, Elkington questions why copies of the sentencing hearing transcript he asserts he received from the Department on February 26, 2020, and from the trial court in June 2020, did not contain the President Judge's February 20, 2020 signature. We note that the copy from the Department was mailed on February 13, 2020, which **predated** the President Judge's signature. While it is unclear why the second copy did not contain **(Footnote continued on next page…)**

15

case number and misspellings of his name in the hearing transcript's text, which are better described as typographical errors, do not implicate the accuracy or validity of the transcript as a whole. From these inaccuracies and his inability to obtain the transcript in the past, Elkington demands that this Court infer that the transcript is inaccurate and untrustworthy. He appears to also suggest that the hearing transcript presented by the Department was somehow created specifically for this proceeding. However, we are not required to accept as true unwarranted inferences from facts or argumentative allegations. *Diess*, 935 A.2d at 903. Further, we note that in denying the Motion to Correct, the trial court cited not only the absence of individuals involved in the sentencing hearing, but also the fact that "**none** of the requested changes **are substantive in nature**[,] **which would affect the outcome** of this matter." (Trial Ct. Jan. 26, 2021 Order (emphasis added).) Reviewing everything currently before us, we are satisfied that there are no factual disputes that are authentic, real, or free from pretense that would directly affect the outcome of this matter, nor are there genuine issues of material fact, that preclude us from ruling on the Motion for Judgment on the Pleadings. Instead, the documents reflect that the trial court ordered Elkington to pay costs during the sentencing hearing such that the Department was authorized to deduct funds from Elkington's inmate account to pay those costs under Section 9728(b)(5).

With regard to Elkington's assertions that the trial court's oral statements are irrelevant because it is the written sentencing order that controls and the absence of such sentencing order here renders the Department's actions unlawful, we disagree. Elkington's own Petition refers to the sentencing hearing transcript and asks for the deductions to cease **until** the Departments "provid[es] either a valid Sentencing

---

that signature, we believe it likely resulted from an oversight, and, therefore, are satisfied with the authenticity of the signed and certified version now before the Court.

16

Order or transcript of [Elkington's] Sentencing Hearing explicitly" imposing costs on Elkington. (Petition ¶¶ 5, 13.) Further, the courts have considered sentencing hearing transcripts in similar challenges in the absence of a written sentencing order. *See Mazer*, 24 A.3d at 482. *See also Gilmore*, slip op. at 4-5 (relying on sentencing hearing transcript and criminal docket to determine the terms of an inmate's sentence in the absence of a written sentencing order); *Joseph*, 96 A.3d at 371 (same). Elkington asserts that the only operative document is a written sentencing order, pursuant to *Isabell*, *Commonwealth v. LeBar*, 860 A.2d 1105 (Pa. Super. 2004), and *Quinlan*, and that *Mazer* and the other cases relying on the sentencing hearing transcripts are distinguishable because they did not involve disputes as to the accuracy of those transcripts. Neither are persuasive reasons to deny judgment on the pleadings.

*Isabell*, *LeBar*, and *Quinlan* do not control because there **were written sentencing orders** that controlled over the subsequent **inconsistent** actions by the courts of common pleas, court clerks, or the Department. *Isabell*, 467 A.2d at 1289, 1292-93; *LeBar*, 860 A.2d at 1111; *Quinlan*, 639 A.2d at 1237-38. Here, there is no specific written sentencing order, and, therefore, there can be no conflict with the sentencing hearing transcript and related forms (the Sentencing Sheets and DC-300B Form). As to Elkington's claim that *Mazer* and the other cases that relied on the sentencing hearing transcript are distinguishable, we disagree based on our conclusion that there is no genuine dispute as to the sentencing hearing transcript here.

Finally, to the extent Elkington points out he was ordered to pay costs of prosecution and not court costs and that the trial court did not calculate the costs, these are not reasons to deny the Motion for Judgment on the Pleadings. Court costs

and costs of prosecution are treated as one and the same. *Mazer*, 24 A.3d at 483-84. It is unnecessary for the trial court to order the specific amount of costs to be collected, and it is not unlawful for the court clerk to calculate the amount of the costs at a later time. *Id.*

Because there are no genuine issues of material fact in dispute relating to the trial court's ordering Elkington to pay costs during the December 26, 2010 sentencing hearing, the Department was authorized by Section 9728(b)(5) to deduct funds from Elkington's inmate account to pay for those court-ordered costs and is entitled to judgment as a matter of law on that basis.[10]

## IV.    Conclusion

For the foregoing reasons, we deny Elkington's Motion for Summary Judgment, grant the Department's Motion for Judgment on the Pleadings, and dismiss Elkington's Petition.

**RENÉE COHN JUBELIRER,** Judge

---

[10] Because of our disposition, we do not address the Department's assertion that the Petition is barred in its entirety by sovereign immunity pursuant to *Tate*. However, we note that while sovereign immunity precludes inmate claims seeking the restitution of funds alleged to have been improperly deducted, *Johnson v. Wetzel*, 238 A.3d 1172, 1181 (Pa. 2020), *Tate*, 133 A.3d at 359-60, claims seeking a prohibitory injunction to prevent the Department for further deductions are not so barred, *Lambing v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 488 M.D. 2017, filed July 23, 2020), slip op. at 4 n.2 and 9; *see also Stackhouse v. Pennsylvania State Police*, 892 A.2d 54, 61 (Pa. Cmwlth. 2006) (holding that sovereign immunity does not bar suits seeking prohibitory injunctions to restrain state action); *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330, 1331 (Pa. Cmwlth. 1996) (same). Although not binding, the unreported opinion in *Lambing* is cited for its persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Lambing* is consistent with *Stackhouse* and *Bonsavage*.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geoffrey Elkington,                    :
                     Petitioner        :
                                       :
          v.                           :     No. 478 M.D. 2018
                                       :
Department of Corrections,             :
                     Respondent        :

## **O R D E R**

**NOW**, May 27, 2021, the Motion for Summary Judgment filed by Geoffrey Elkington is **DENIED**, the Motion for Judgment on the Pleadings filed by the Department of Corrections is **GRANTED**, and the Petition for Review in this matter is **DISMISSED**.

                                                       _____

                                                       **RENÉE COHN JUBELIRER,** Judge